LDG TIMBER ENTERPRISES, INC.

v.

The UNITED STATES.

No. 205–82C.

United States Claims Court.

July 3, 1985.

David A. Linn, Oakhurst, Cal., for plaintiff; Lindley, Linn & Walton, Oakhurst, Cal., of counsel.

Sara V. Greenberg, Washington, D.C., with whom was Asst. Atty. Gen. J. Paul McGrath, Washington, D.C., for defendant; David M. Cohen and Sandra P. Spooner, Washington, D.C., of counsel.

## OPINION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

YANNELLO, Judge.

This is a contract case brought pursuant to the Contract Disputes Act, 41 U.S.C. §§ 601 *et seq.* (1982). The contract in issue was for the salvage sale and logging of timber. Some of the timber in the sale area had been killed or was diseased and

the chief concern of the contract was to accomplish the removal of this timber.

### I. *Discussion*

### A. *Background Facts: Contract Clauses*

Essentially two classes of timber were the subject of the sale, as defined in paragraph C2.365. The first class of timber was priority I, which was defined as dead or beetle-infested—the type of timber for which salvage removal was the most important. The second class of timber was priority II which, while not already dead or beetle-infested, was not expected to survive to the next cutting season because of disease, low vigor, or mechanical risk. In addition, live or green trees might be designated for logging under certain circumstances. (*See, e.g.,* clause B2.131, Damage by Purchaser; B2.32, Construction Clearing; and other similar clauses.)

The advertisement for the contract contained the following numerical estimates of the quantities of various species of timber anticipated on the job:

| | Thousand Bd. Feet (MBF) |
| --- | --- |
| Ponderosa Pine | 250 |
| Sugar Pine | 2125 |
| White Fir | 125 |
| Other | nominal |
| TOTAL | 2500 |

The government arrived at the stated estimated quantities through various means. The affidavits appended to defendant's motion, uncontroverted by plaintiff, establish that Forest Service personnel utilized infrared photography of the area about one year before the sale, a walk-through by the district staff and then a helicopter inspection at about the time of the sale, when preparing the estimates in the advertisement.[1]

Several provisions addressed the nature of the numerical estimates of timber volume.[2] For example, the advertisement contained the following language:

The quality, size, and age class of the timber are estimates based on detailed cruise information on file and available for inspection at the Forest Service offices listed in the advertisement. INFORMATION LISTED HEREIN IS MADE AVAILABLE WITH THE UNDERSTANDING THAT VALUES SHOWN ARE NOT ESTIMATES OF A PURCHASER'S OWN RECOVERY AND ARE NOT A PART OF THE TIMBER SALE CONTRACT.

In addition, the advertisement contained the following language, to be signed and acknowledged by the bidders in returning their bids:

BIDDERS ACKNOWLEDGE THAT FOREST SERVICE ESTIMATES OF COSTS AND TIMBER VOLUMES ARE NOT GUARANTEED AND THAT THE FOREST SERVICE GRANTS NO WARRANTY, EITHER EXPRESS OR IMPLIED, OF THEIR ACCURACY. BIDDER EXPRESSLY DISCLAIMS ANY RELIANCE ON FOREST SERVICE COST ESTIMATES AND TIMBER VOLUME ESTIMATES IN SUBMITTING THIS BID.

This was echoed in contract clause B2.4:

... [T]he estimated volumes stated in [the contract] are not to be construed as guarantees or limitations of the timber to be designated for cutting under the terms of this contract.

Finally, the advertisement further alerted bidders to the need for site inspection as follows:

| | Orig. Est. | 2nd Survey |
| --- | --- | --- |
| Ponderosa Pine | 250 | 662 |
| Sugar Pine | 2125 | 1743 |
| White Fir | 125 | 560 |
| Other | nominal | 225 |
| TOTAL | 2500 | 3190 |

The data of the second survey did not significantly vary from that of the first survey when read together with the contract's variation in estimated quantity clauses discussed in the text, *infra*.

---

1. In addition to these efforts with respect to the estimates set forth in the advertisement, the government conducted a survey or cruise shortly before contract award. This second survey revealed the following, in MBF: ·

2. The advertisement addressed only estimated

... bidders are urged to examine the timber sale area and make their own recovery estimates.

Indeed, plaintiff's president, Lloyd George, conducted a two-day examination of the sale area prior to submitting his bid. During this on-site inspection, plaintiff cruised over 700 acres actually counting and estimating the volume of timber (particularly fir) and also noting the quality of timber. (Deposition of George at pages 12–13.)

Only two additional provisions of the contract bear on the estimated quantities, and they might be referred to as "Variation in Estimated Quantities" clauses. The first, paragraph C2.41 entitled Adjustment for Quantity Deficit, addressed the possibility that designated priority I timber might yield *less than* 75 percent of the *total* estimated quantity (*i.e.*, 75 percent of 2500 MBF or 1875 MBF). This clause provided that in that event the government would, upon the contractor's request, mark priority II timber for logging so as to make up the difference and, with the priority I timber, yield that 75 percent of the *total* estimated quantity (*i.e.*, 1875 MBF).

The second clause, paragraph C2.42, entitled Adjustment for Excess Quantity, addressed the possibility that, taking into account the various sale areas, the sale quantity might be *more than* 150 percent of the *total* estimated quantity (*i.e.*, 150 percent of 2500 MBF or 3750 MFB). This clause, too, provided for adjustments in that event, particularly in designations of sale areas.

### B. *Background: Performance; Disputes*

During contract performance, two areas of disagreement arose. Both of these controversies concerned the amount of timber actually logged as contrasted with contract estimates. The actual logging was as follows:

| | Estimate (MBF) | Actual (MBF) |
|---|---|---|
| Ponderosa Pine | 250 | 256 |
| Sugar Pine | 2125 | 899 |
| White Fir | 125 | 268 |
| Other | na | 24 |
| TOTAL | 2500 | 1477 |

First, plaintiff alleged that certain fir trees were marked as priority I timber— which must be logged—when in fact the timber met the definition of priority II timber—which was to be marked and logged only as requested by the contractor to yield the 75 percent minimum of the total estimated quantities. As a result, alleged plaintiff, it had logged more fir timber (268 MBF) than was originally estimated in the contract (125 MBF).

Second, plaintiff disputed logging of priority II timber not in direct proportion to the estimates for individual species. Plaintiff, for example, protested logging more fir and less pine, proportionately, than was estimated in the contract. Plaintiff believed that if only 75 percent of the total estimated quantities were to be realized, there should be a proportional adjustment in each species, *i.e.*, 75 percent of fir, 75 percent of pine, and so forth.

The reasons for underlogging of pine are not altogether clear on the facts now before the court.[3] Plaintiff did request that priority II timber, including pine, be marked for cutting. The government was prepared to designate some priority II timber of various species, and, although it denied any contractual obligation to do so, indicated a willingness to strive to select such designations in proportion to specie estimates in the contract.

Dispute between the parties as to actual designations continued. Accordingly, the government allowed plaintiff to choose its own area for marking of this priority II

volume; it did not contain any estimates as to the number of trees comprising that volume or the density of trees (either totally or by specie).

3. For example, the evidence before the court (including representations at oral argument and documents appended to the parties' motions) reveals that, when the contract was prepared and prior to any of the pending disputes, the sale area was modified by agreement of the parties. Certain timber area was deleted from the sale site. It is not known precisely which areas were deleted but they have been described generally as being significant sources of the desired pine. (*See* deposition of Mr. George, at pages 31 to 33.)

timber. Plaintiff could choose any one of the three subdivisions in the sale area, and could choose the area wherein concentrations of the desired timber (*i.e.*, pine) was the largest.

Plaintiff's dissatisfaction continued, however, and it continued to protest the unavailability of estimated volume by individual specie (and hence of total estimated volume). Because of this dispute, plaintiff ultimately ceased performance of the contract, having logged a total of only 1447 MBF of timber of all species and types.[4]

### C. *Claims Before Contracting Officer*

First, with respect to the marking of fir timber, plaintiff alleged that the government was marking as priority I timber (dead or infested timber which the contractor was obligated to log) that which was actually priority II timber (live but with a low survival prognosis, which the contractor could request to yield a total of 75 percent of the estimated volume). Plaintiff contended that it was thus obligated to fell more fir (allegedly misdesignated as priority I) than it felt was appropriate under proper marking procedures and given the definitions of the various priority timbers in the contract.

Plaintiff did in fact log approximately 268 MBF of white fir whereas the contract's estimate placed that specie estimated volume at 125 MBF, for an increase of 143 MBF. The contractor did not compute the extent to which the 268 MBF actually logged was due to mismarking, nor did the contractor discuss the contract clauses which might have warranted logging of priority II timber. The contractor did estimate the additional logging costs per MBF, but did not determine the amount of log-

ging due solely to mismarking so as to form the basis for monetary relief.

The contracting officer asserted (in his final decision on this issue) that the plaintiff was assured that any mismarked trees need not be felled and that plaintiff could log only that priority I fir which it felt was properly marked. It is not known, however, how much fir had been logged prior to this advice or indeed to what extent the timber was in fact mismarked.

Plaintiff's second contention before the contracting officer (CO), submitted in its January 26, 1981, claim letter, was also related to overlogging of fir but on a different basis.

This basis related to the volume estimates contained in the contract and focused not on total volume but on the estimated quantities of particular species of timber. Specifically, plaintiff argued that, when it did request designation of priority II timber (pursuant to the Adjustment for Quantity Deficit clause), the government designated some of the priority II timber of the fir species (whereas estimated quantities of fir had already been logged or were available under priority I markings). Plaintiff contended that other species of priority II timber (such as pine) should have been designated so as to yield proportions of species as contained in the initial estimates.

It was with respect to this claim concerning proportional allocation by specie that plaintiff presented its monetary claim, a claim for some $68,000 in costs for overlogging, which was certified to the contracting officer.[5]

---

**4.** At oral argument, counsel for both parties indicated that this contract, unlike standard supply or construction contracts, did not contain a clause requiring continued performance of the contract as directed by the contracting officer notwithstanding the presence of a dispute. *See, e.g.,* 41 U.S.C. § 605(b).

**5.** Plaintiff computed its monetary claim as follows. In the initial advertisement, total volume was estimated at 2500 MBF. In fact, plaintiff logged a total of 1447 MBF, or 58 percent of the estimate. The initial estimate of fir was 125

MBF and if, in actuality, 58 percent of that amount were logged, plaintiff would have logged 72 MBF. Since 268 MBF of fir was actually logged, plaintiff claimed increased costs for the "additional" 196 MBF.

Put another way, the initial fir specie estimate of 125 MBF was 5 percent of the total estimated volume of 2500 MBF; if 5 percent of the total actual volume of 1447 MBF were fir, only 72 MBF would have been logged.

Thus, plaintiff's computation of its monetary claim was based not on mismarking but on a

In his final decision, the contracting officer determined that the government was not required, by the terms of the advertisement or the contract, to designate priority II timber in relation to any individual species proportion, but was required only to designate such timber so as to yield, together with the priority I timber, a volume equal to at least 75 percent of the total estimate of 2500 MBF.

### D. *Other Claims*

A final contention was presented to this court but was not stated in an amount certain or certified to the contracting officer.[6]

Plaintiff's final contention before this court relates to a claim for anticipated profits lost as a result of the failure to log (or "underlogging" of) estimated quantities of sugar pine and, hence, of total estimated volume. Plaintiff claims lost profits in this regard in an amount of approximately $109,000.

Plaintiff in fact logged only 899 MBF of sugar pine whereas the contract estimated a volume of 2125 MBF. This shortfall resulted also in a total actual logging of 1447 MBF (including the fir noted above and 256 MBF of ponderosa pine, almost exactly as estimated in the contract) rather than the 2500 MBF total volume estimated or the 1875 MBF representing 75 percent of the total estimate.

The facts surrounding this shortfall are somewhat unclear. There appears to be no dispute that the total minimum estimate of 1875 MBF, of various species, not necessarily in proportion to initial estimates and of various priorities I and II, was available for logging. It is the composition of this timber, and the under-availability of pine, which apparently forms the basis of this aspect of plaintiff's claim.

### II. *Decision*

### A. *The Estimates Generally*

Addressing the initial dispute between the parties, the court finds that this was a salvage sale contract and that the advertisement clearly and sufficiently alerted bidders that they should undertake their own surveys and estimates of timber; that the sale was advertised as incompletely marked; and that the numerical estimates furnished in the advertisement were estimates for informational purposes only and not a guarantee or warranty of quantity. *See, e.g., Webco Lumber, Inc. v. United States,* 677 F.2d 860, 230 Ct.Cl. 457 (1982); *see also J.F. Shea Co. Inc. v. United States,* 4 Cl.Ct. 46 (1983).

The only clauses treating variations in estimated quantity (paragraphs C2.41, Deficit, and C2.42, Excess) addressed the *total* estimated quantity, or 2500 MBF. Thus, if a deficit of priority I timber was discovered, designation of additional priority II timber could be requested by contractor so as to yield, *in toto* with priority I timber, 75 percent of the *total* estimate of 2500 MBF, or 1875 MBF. If an excess quantity of more than 150 percent of the *total* estimate of 2500 MBF, or 3750 MBF, were discovered, certain other adjustments could be made.

■ It is found, therefore, that the contract contained no guarantees as to the

---

proportional relation of estimates of individual species to total estimated quantities.

In this connection, in addition to the monetary claim for $68,000 in increased costs, plaintiff indicated that it would accept a "non-cash settlement", namely: ongoing contract performance with a designation of priority II timber consisting of ponderosa pine in twice the amount of the extra fir and the remainder of the priority II timber to be in any specie other than fir (such as additional ponderosa pine or sugar pine).

6. Plaintiff claims that this aspect of its claim relating to lost profits resulting from erroneous estimated quantities was presented to the contracting officer in the "non-monetary" portion of its claim. The claim sought $68,000 as costs for fir logging in excess of an amount of fir by specie proportional to the total quantities. Whether this also encompassed a claim for costs of fir logging in excess of contract requirements due to mismarking will be discussed *infra.*

The non-monetary part of this claim, however, clearly requested only the designation of certain pine species for logging, and presented no claim for monetary relief in any amount, let alone any claim of about $109,000 as requested here.

volume of timber to be supplied by species. The numerical estimates, in this regard, were for informational purposes only, with the contractor required to make its own survey and estimates. Nothing in the adjustment clauses can be read as guaranteeing any percentage of the estimates by particular specie.

■ With respect to the reasonableness of the government's estimates, it is found, generally, that the government undertook adequate action, calculated to provide reasonable estimates. *See, e.g., Caffall Bros. Forest Products v. United States,* 678 F.2d 1071, 1078, 230 Ct.Cl. 517, 530 (1982).

■ With respect to the government's duty to provide estimate information generally (and here with respect to the second and more recent survey results which were not disseminated by the government), the matter is well settled. *See, e.g., Petrofsky v. United States,* 616 F.2d 494, 222 Ct.Cl. 450 (1980). If the government deliberately withholds vital information, thereby misleading the contractor, it may be held liable. *Helene Curtis Industries, Inc. v. United States,* 312 F.2d 774, 160 Ct.Cl. 437 (1963). However, the corollary to this rule is that the government is under no duty to volunteer information which the contractor can reasonably be expected to seek out himself. *H.N. Bailey & Assoc. v. United States,* 449 F.2d 376, 196 Ct.Cl. 166 (1971). The corollary also applies where the information can readily be obtained from sources other than the government (*Firestone Tire & Rubber Co. v. United States,* 558 F.2d 577, 214 Ct.Cl. 457 (1977)), or where the contract itself contemplates the means by which such information be obtained, such as by contractor site inspection (*Ambrose-Augusterfer Corp. v. United States,* 394 F.2d 536, 184 Ct.Cl. 18 (1968)).

■ Thus, the contract here contains no guarantee of estimates other than representation by the government that certain adjustments would be made if the *total* quantity of timber were less than 1875 or more than 3750 MBF. No guarantees are present with respect to any numerical volume estimate nor any percentage assured with respect to individual species. The government used all reasonable care in arriving at its estimates and was under no duty to provide this or similar information, having advised bidders to ascertain the information themselves through site inspections.

Similarly, the contracting officer's letter dated September 24, 1980 saying they would "strive to provide species in approximate proportions" to the estimated composition by species, did not constitute a warranty or guarantee.

## B. *Jurisdiction Generally*

Defendant argues that this court need not reach the merits of at least a portion of the instant case, particularly insofar as estimated quantities are concerned, because it lacks jurisdiction.

■ The government asserts that this court lacks jurisdiction, particularly over that aspect of plaintiff's claim which seeks specific monetary damages of approximately $109,000 as a result of lost profits for underlogging of pine (based on the estimates of individual species). Defendant notes that the plaintiff has failed to certify to the contracting officer any claim for such money. The court finds the defendant's characterization of noncertification to be correct. The court does not agree with plaintiff that this claim was, in essence, presented to the contracting officer as part of its January 26, 1981, claim letter.[7]

In addition to addressing this matter, the court notes that a lack of jurisdiction of

---

**7.** In that letter, the only monetary amount that was certified was $68,000 relating to costs of overlogging of fir. The only mention of underdesignation of pine was in an alternate nonmonetary request for relief through additional designation of timber by the government; it has been established that, where a claim is suscepti-

ble of statement in precise monetary terms, such specificity is required in the presentment, and certification, of the claim to the contracting officer. *See Tecom, Inc. v. United States,* 732 F.2d 935 (Fed.Cir.1984) discussed in the text *infra.*

this court cannot be waived by the parties nor inferred by implication. The court must assure itself, preferably with the assistance of briefs by the parties, of jurisdiction of all aspects of the controversies presented to it.

Pursuant to the Contract Disputes Act, 41 U.S.C. § 605(c)(2), all claims by the contractor against the government must be presented in writing to the contracting officer and, if seeking money in an amount in excess of $50,000, the claim must be certified as accurate and complete.

■ Absent such proceedings (of presentment and, if appropriate, certification), the claim is not one on which the contracting officer could issue, or be deemed to have issued, a final decision pursuant to 41 U.S.C. §§ 605(a) and (b). Hence, this court has no jurisdiction to entertain any appeal with respect thereto pursuant to 41 U.S.C. § 609(a). *See, e.g., Skelly & Loy v. United States,* 685 F.2d 414, 231 Ct.Cl. 370 (1982); *W.M. Schlosser Co. Inc. v. United States,* 705 F.2d 1336 (Fed.Cir.1983); and *Paul E. Lehman, Inc. v. United States,* 673 F.2d 352, 230 Ct.Cl. 11 (1982).[8]

■ Moreover, if a claim is essentially one for money and susceptible of being stated in monetary terms, it must be presented and stated (and, if appropriate, certified) to the contracting officer in the amount certain which is claimed. *See, e.g., Tecom, Inc. v. United States,* 732 F.2d 935 (Fed.Cir.1984); *see also J.F. Shea Co., Inc. v. United States,* 4 Cl.Ct. 46 (1983). A claim for an amount of money which has not been presented to the contracting officer can be subsequently presented to this court if the amount was determined or determinable after presentment to the contracting officer as the result of newly discovered or newly developed evidence. *Id.*

■ Finally, if a claim is comprised of various aspects, which aspects arise out of a common set of operative facts, the claim must be presented, for certification purposes, in its entirety and not in its individual aspects. For example, various aspects of a claim, each of which seeks monetary relief of less than $50,000, cannot be presented separately and without certification if, when combined, they amount to a claim in excess of $50,000. *See, e.g., Warchol Const. Co., Inc. v. United States,* 2 Cl.Ct. 384 (1983); *J.F. Shea Co., Inc. v. United States,* 4 Cl.Ct. 46 (1983).[9]

## C. *Mismarking and Overlogging of Fir*

■ The parties have not raised any jurisdictional issue concerning this claim. Nonetheless, the court must examine such issue and satisfy itself of its jurisdiction.

With respect to plaintiff's assertion that it was required to overlog quantities of fir because of government mismarking of priority I and priority II timber, plaintiff seeks additional costs. Such a claim is clearly one for which an amount certain could have been stated before the contracting officer. Plaintiff's claim, however, did not contain a statement of such costs. Rather, plaintiff sought those costs attributable to and computed on the basis of

---

**8.** *Skelly & Loy,* and similar cases, cited above, presented situations in which the contractor presented to the contracting officer one, single, claim, which although in excess of $50,000, was not certified. The court, in these cases, held that no decision by a contracting officer on such a claim, absent necessary certification, could be a final decision under the Contract Disputes Act, 41 U.S.C. §§ 601 *et seq.,* so as to warrant direct access to this court. The court, accordingly, noted that the appropriate procedure was for the contractor to re-present its claims, properly certified, to the contracting officer and there-after, upon receipt of his final decision, to appeal to the appropriate tribunal.

**9.** The determining factor in understanding whether individual claims are merely various aspects of a single claim, involving a common set of operative facts, or are in fact separate claims, is not the characterization placed on the claim by the contractor, but whether the demand for relief arose out of essentially interrelated conduct and services and the same, or closely connected, facts. *Walsky Const. Co. v. United States,* 3 Cl.Ct. 615, 618–19 (1983).

deviations from estimated quantities of timber on an individual specie basis.[10]

Thus, under the doctrines outlined above, particularly *Skelly & Loy* and *Tecom*, it is concluded that plaintiff has not as yet presented a claim before the contracting officer upon which a final decision could be entered from which an appeal directly to this court would lie. The facts from which the marking claim arises are different from those involving estimated quantities as discussed *infra*.

The court therefore lacks jurisdiction over this claim by plaintiff and the complaint to this extent shall be dismissed.

### D. *Estimated Quantities and Overlogging of Fir*

 This portion of plaintiff's complaint seeks appeal from the contracting officer's decision denying plaintiff's certified claim for approximately $68,000 computed as increased costs based on logging of fir in amounts in excess of the estimated quantities (or pro rata proportions thereof) of that individual species of timber. There is no question concerning the court's jurisdiction of this claim. The government argues that, under the terms of the contract, no guarantees were given to plaintiff with respect to individual species and no breach of contract occurred in that regard.

Based on the preceding discussion concerning estimated quantities, the court finds in defendant's favor and, on the merits, concludes that defendant's motion for summary judgment is GRANTED and this portion of plaintiff's complaint, seeking relief of $68,000, based on inaccurate estimates of quantities, shall be dismissed.

### E. *Estimated Quantities and Underlogging of Pine* [11]

In addition to alleging that the failure to match the contract's estimates of individual species of timber resulted in increased costs for overlogging of fir, plaintiff also alleges here that these failures resulted in lost profits from underlogging of pine. The amount of the alleged lost profits is stated as approximately $109,000.

Unquestionably, on the merits, this claim for lost profits from underlogging of pine is governed by the same discussion of the effect of the contract estimates as is set forth above regarding overlogging of fir, and would be similarly unavailing to plaintiff's claim here regarding the individual specie of pine.

The government, however, urges that this court does not have jurisdiction to consider the merits of this claim inasmuch as plaintiff has not presented or certified such claim to the contracting officer (CO).

The first question which this court must resolve is whether this request for relief is a distinct claim from that seeking relief for underlogging of fir or whether it merely presents another facet of the same claim. The test is whether the request for relief arises from a common set of operative facts or essentially related conduct.

 This is a threshold question, wholly apart from any consideration of the certification requirements of the Contract Disputes Act, 41 U.S.C. § 605(c)(1), whose importance is perhaps obvious. *Only* if a claim (or some aspect thereof) has been *presented* to a CO can it form the basis of his decision from which review by the court

---

**10.** It is further noted by the court that this claim, based on alleged mismarking, is distinct from, and does not arise out of the same operative facts as, the claim relating to overlogging of fir and/or underlogging of pine based on inaccuracies in the estimates of quantities of individual species of timber. Indeed, in its claim letter, plaintiff makes no attempt to equate the number of board feet of fir overlogged as a result of actual mismarking of priorities with the number of board feet of fir (196 MBF) allegedly overlogged as a result of deviations from estimated quantities of individual species of timber.

**11.** In connection with underlogging, plaintiff has asserted no claim of underlogging of total quantity (*i.e.*, the actual logging of 1477 MBF as contrasted with 75 percent of the total of 2500 MBF, or 1875 MBF). Indeed, inasmuch as plaintiff ceased performance over the dispute concerning designation of pine, specifically, such a claim seems unlikely. There appears to be no controversy over the fact that, all species considered, the sale areas would have yielded at least 1875 MBF.

can then be sought. By definition, there can be no examination by this court of a claim which has not been *presented* to the CO.

The second question for resolution concerns the situation where one aspect of a claim has been presented and perhaps, if necessary, certified to the CO, but other additional aspects of the same claim are then raised before the court in the first instance in an appeal from the CO's decision resulting in an accretion in the computation of the *ad damnum* request. In this respect, the courts and boards have favored an approach which expedites litigation, which does not place form over substance, and which does not require undue re-presentation or re-certification.

As the Court of Appeals for the Federal Circuit stated in *Tecom, supra,* any claim for monetary damages must be stated with all possible specificity. And, as required by the certification provisions of the Contract Disputes Act, 41 U.S.C. § 605(c)(1), the contractor must represent that a claim in excess of $50,000 is "accurate and complete" to the best of the contractor's knowledge at the time of presentment.

It is now well established that if one facet of a claim is initially presented to the CO, but, being under $50,000, is not certified, and additional facets of the claim are separately presented—which taken together with the initial presentation would yield a total claim in excess of $50,000—there is no CO's decision over which this court could exercise jurisdiction until the total claim is presented and certified to the CO. *Skelley & Loy, supra.* However, where a claim was, at the time, reasonably presented in an amount of less than $50,000, and thus was not required to be certified, the contractor might thereafter present a larger claim, even if over $50,000, to the court without re-presentation or certification to the CO under certain circumstances.

For example, in *Tecom, supra,* the Court of Appeals for the Federal Circuit recognized that an accretion in the amount of the claim (from an amount presented to the CO of less than $50,000 to an amount present-

ed to the board in excess thereof) might properly be the result of the mere passage of time during the litigating process; thus the initial presentment to the CO might not be expected to include the full amount of the claim as ascertained before judgment in this court or an agency board.

Similarly, in *Curley, Inc. v. United States,* 6 Cl.Ct. 274 (1984), Senior Judge White of this court determined that such permissible accretion (from an amount less than $50,000 before the CO to an amount of more than $50,000 before the court) might be allowed where the initial deficiency was neither intentional (*e.g.,* a deliberate attempt to avoid the certification requirement) nor due to neglect or carelessness on the part of the contractor. In short, the accretion might be permitted without re-presentment or certification to the CO where the contractor neither knew nor reasonably should have known of the additional aspects of the claim at the time of initial presentment to the contracting officer.

Such accretions have also been permitted when the initial claim presentation was in excess of $50,000 and was certified (as here in the amount of about $68,000), under certain circumstances. For example, in *Shea, supra,* the contractor was allowed to present additional facets of its claim before a judge of the court where these facets added to the amount of the claim presented and certified to the CO. The court determined that no re-presentment or certification before the CO was required, noting that the additional amounts were discovered as a result of the litigation process, and audits conducted as a part thereof, and resulted from, in essence, newly discovered evidence.

Finally, in *D.J. Barclay & Co., Inc.,* ASBCA No. 28908, 85–1 BCA ¶ 17,922 (February 13, 1985), and in the several cases cited therein, the *ad damnum* computation was increased before the board. The board retained jurisdiction inasmuch as it held that the essentials of the claim itself had been presented and certified to the contracting officer. The board did not apply as narrow a review as did the cases cited

above, such as limiting acceptable accretion in damages to situations where newly discovered evidence or other factors excused the contractor's failure to present the complete claim to the CO. (*But see, BickCom Corporation,* ASBCA Nos. 24782, 26877, 84–1 BCA ¶ 16,957 at 84,323). (FREEMAN, J. dissenting).

In the instant case, the contractor presented, and certified, one claim to the CO—a claim for $68,000 representing the costs of overlogging of fir timber. The jurisdictional issue here does not involve a mere increase in that *ad damnum* request. (If that were the issue, consideration of such cases as *Shea, Curley,* and *Barclay, supra,* would be appropriate.)

The issue here is whether plaintiff can present to this court, without first presenting and certifying to the CO, its request for $109,000 representing lost profits as a result of underlogging pine.

The facts which caused the fir logging to exceed the estimates for that particular species may well be different from the facts which caused the pine logging to be less than the estimates for that particular specie. (Indeed, the facts surrounding the underlogging of pine are not now altogether clear. While further proceedings in this court might serve to develop them further, this court can so proceed only where it is determined that jurisdiction lies here in the first instance.) [12]

■ Here the claim does not arise out of a common set of operative facts; it is not merely an aspect of a claim which has already been presented to the CO and on which the CO has deliberated. Rather, it raises new matters which must, in the first instance, be presented to the CO for his consideration (including the possibilities of settlement). Since plaintiff failed to present this claim to the CO, this court is without jurisdiction to hear the matter.

## CONCLUSION

The plaintiff's claim for costs resulting from logging of mismarked timber is a claim for money which has not been reduced to a specific amount (particularly since no specific quantity of such logged timber has been identified). Hence, that claim has not been fully presented (or if necessary certified) to the contracting officer and is beyond the court's jurisdiction. That portion of plaintiff's complaint shall be dismissed.

The claim for $68,000 resulting from overlogging of fir based on variations in estimated quantities of timber by particular species is denied as a matter of law inasmuch as the contract contained no warranties or guarantees in this respect and was not breached by the government. That portion of the plaintiff's complaint shall be dismissed with prejudice.

The claim for $109,000 for lost profits from underlogging sugar pine should have been presented and certified to the contracting officer, but was not. Hence the claim is beyond this court's jurisdiction and shall be dismissed.

Accordingly, the Clerk is directed to dismiss the complaint.

---

12. Clearly, the legal theory as argued before this court by plaintiff involves an allegation that the quantities of timber of individual species as estimated in the contract were not realized—for whatever factual reasons—and that accordingly the contract was breached. That theory, also the basis of the overlogging of fir claim, has been discussed above. Notwithstanding any presumption as to the likely outcome of a claim made on such basis, however, the statutory requirements of presentment to the CO, and certi-

fication if appropriate, must be satisfied before any claim can be presented to this court. *See Theon v. United States,* 765 F.2d 1110, 1115 (Fed.Cir.1985). Moreover, the offer, in plaintiff's initial claim letter, to accept designations of pine in the sale areas as a compromise settlement of a non-monetary nature, as described in footnote 5 above, does not satisfy the requirement that a claim, particularly for money damages, be presented and stated with specificity. *See Tecom, supra; Theon, supra.*