AAI CORPORATION, Plaintiff,

v.

UNITED STATES of America,
Defendant.

No. 253–89C.

United States Claims Court.

Feb. 22, 1991.

Bernard L. Shapiro, Philadelphia, Pa., for plaintiff.

Jeffrey J. Bernstein and Frank B. Flink, Jr., with whom was Asst. Atty. Gen. Stuart M. Gerson, for defendant. LTC Richard R. Kaeser, U.S. Air Force, of counsel.

## OPINION

MARGOLIS, Judge.

This government contracts case is before the court on the defendant's motion to dismiss the plaintiff's complaint for lack of subject matter jurisdiction, pursuant to RUSCC 12(b)(1) and (h)(3). The plaintiff seeks to recover its share of acquisition savings resulting from the defendant's alleged acceptance of a Value Engineering Change Proposal ("VECP") submitted in connection with a contract between the parties. The defendant argues that this court lacks jurisdiction to adjudicate the plaintiff's claim because it was not considered in its present form by the defendant's contracting officer. The defendant also contends that this court lacks jurisdiction over what the defendant contends is a request for declaratory relief. After careful review of the record and hearing oral argument, this court grants the defendant's motion to dismiss with respect to the plaintiff's claim for future contract savings not yet realized by the defendant, but denies the defendant's motion to dismiss with respect to all other issues.

## FACTS

The plaintiff, AAI Corporation ("AAI"), is a Maryland corporation engaged in research and development, often on behalf of various defense agencies of the defendant, the United States. The parties executed a fixed price, incentive research and development contract, Contract No. F08635–84–C–

0079, on October 31, 1983. The defendant contracted with AAI to develop and fabricate a Timer, Actuator, Fin and Fuse assembly ("TAFF" or "timer") to be used on non-nuclear bombs by the Air Force Strategic Air Command.

The contract was modified numerous times. On November 18, 1985, modification number P00009 added two options to the contract. Option I was for Low Rate Initial Production (LRIP) of a maximum of 5000 Units. Option II was for the production of 18,000–20,000 units. Modification P00009 also amended the original contract to incorporate certain Federal Acquisition Regulation ("FAR") clauses, replacing certain Defense Acquisition Regulation ("DAR") clauses. FAR provision 52.248–1, 48 C.F.R. § 52.248–1 (1984), entitled "Value Engineering," was incorporated into the contract. The Value Engineering Clause in this provision states that "[t]he Contractor is encouraged to develop, prepare and submit value engineering change proposals ("VECP's") voluntarily. The Contractor shall share in any net acquisition savings realized from accepted VECP's, in accordance with the incentive sharing rates in paragraph (f) below." [1]

On January 30, 1987, modification number P00011 established prices and quantities for the two options added by modification P00009. Option I was priced at $2,219,624 for a quantity of 1500 units and related items, and Option II was priced at $4,582,660 for a quantity of 14,000 units and related items. Modification P00011

also exercised Option I, for 1500 units and related items.

AAI claims that, in accordance with the Value Engineering Clause, it aggressively undertook a redesign effort to reduce the cost of fabricating the timer to be produced under the contract, separate and apart from the work required under the contract. During a design review with the government, on August 4–5, 1987, AAI submitted, on August 5, what AAI contends was a preliminary VECP. AAI alleges that the design presented by AAI at the design review incorporated all changes required by the contract's statement of work and all VECP changes. By letter of August 12, 1987, defendant "authorized [AAI] to proceed with the fabrication of the preproduction sample in accordance with the design presented at the design review." By letter dated August 26, 1987, the government disapproved the preliminary VECP, indicating that these changes were part of the existing contract. AAI, however, contends that the authorization to proceed letter constituted acceptance, or constructive acceptance, of the VECP because the VECP changes were incorporated in the design presented at the design review.

AAI submitted a formal VECP, dated October 14, 1987, to the government on October 19, 1987. AAI asserted that the net unit cost savings would be $45.43 computed for a forecasted production run of 14,000 units. Under the contract's Value Engineering Clause, FAR 52.248–1(b), "net acquisition savings" includes instant contract savings,[2] concurrent contract savings,[3] and future contract savings.[4] The

---

1. Paragraph (b)(3) of the Value Engineering Clause defines a VECP as a proposal that:
    (1) Results in a change to this, the instant contract, to implement; and
    (2) Results in reducing the overall projected cost to the agency without impairing essential functions or characteristics; *provided,* that it does not involve a change—
        (i) In deliverable end item quantities only;
        (ii) In research and development (R & D) end items or R & D test quantities that is due solely to results of previous testing under this contract; or
        (iii) To the contract type only.

2. "Instant contract savings" are "the net cost reductions on this, the instant contract, and which are equal to the instant unit cost reduc-

tion multiplied by the number of instant contract units affected by the VECP, less the Contractor's allowable development and implementation costs." 48 C.F.R. § 52.248–1.

3. "Concurrent contract savings" are the "measurable net reductions in the prices of other contracts that are definitized and ongoing at the time the VECP is accepted." *Id.*

4. "Future contract savings" are "the product of the future unit cost reduction multiplied by the number of future contract units scheduled for delivery during the sharing period. If this contract is a multiyear contract, future contract savings include savings on all quantities funded after VECP acceptance." *Id.*

plaintiff claimed that it was entitled to a share of the acquisition savings. With regard to the Low Rate Initial Production of 1500 units resulting from the exercise of Option I by modification P00011, AAI stated that "there [were] no net instant contract savings anticipated due to the rather extensive contractor implementation costs being experienced."[5] Plaintiff's Exhibit 10, page 70, ¶ 5.5.1.

> Although the final implementation costs cannot be determined as yet, the current delta has already offset a good portion of the total unit cost savings available. The program plan is to complete the LRIP effort with the current funding, by achieving a 100% offset between the instant contract savings and the implementation costs, which would allow a no-cost implementation of the VECP under the instant contract.

*Id.* In other words, at this point in time, AAI anticipated that implementation costs would be offset by instant contract savings, leaving no instant contract savings or, more properly stated, no negative instant contract savings.[6]

The Air Force responded to the VECP with a letter dated October 28, 1987 disapproving the VECP on the ground that the design changes resulted from work required by the original contract, and therefore there was no VECP as defined by the FAR.

AAI then submitted a claim to the Air Force contracting officer on December 18, 1987 asserting that (1) the VECP complies with the FAR definition of a VECP; (2) the design changes included in the VECP were not developed as a result of contractual requirements; and (3) AAI is entitled to share in the savings resulting from the VECP. The Air Force asked for clarification as to the amount of the claim on January 12, 1988. AAI's response of January 14, 1988, reaffirmed that "there are no

instant contract savings or negative instant contract savings anticipated on the instant contract." In other words, the plaintiff anticipated that implementation costs would be offset by instant contract savings, leaving no instant contract savings or negative instant contract savings. AAI also repeated its claim to a portion of savings related to hypothetical future contracts.

Option II was awarded, by modification P00017 effective September 15, 1988, for the production of 14,000 units. The Air Force contracting officer ultimately denied the VECP claim on June 30, 1988. The contracting officer stated that "the Government considers the design to be resultant from the funded redesign effort to correct a deficiency of the TAFF" and that the "Air Force never at any time accepted or recognized the alleged VECP from AAI."

AAI then filed its original complaint in this court, dated May 5, 1989, appealing the decision of the contracting officer and seeking its share of acquisition savings. In this complaint, AAI stated "[p]laintiff anticipates that the allowable implementation costs associated with the VECP will offset the cost savings on the 1,275 units to be delivered under the instant contract. Therefore, no instant contract savings are claimed under the VECP." The original complaint reflects a belief that the sum of instant contract savings and VECP implementation costs approximates zero, leaving no instant contract savings or negative instant contract savings. After AAI filed its original complaint, it identified additional implementation costs that it incurred as a result of development and implementation of the VECP. These implementation costs exceeded instant contract savings by $504,875.75. AAI then filed its first amended complaint to include these implementation costs and the resulting negative instant contract savings of $504,875.75 and to in-

---

**5.** At the time when the VECP was allegedly implemented, AAI had delivered 225 of the TAFF units, meaning that 1275 units of Option I were potentially affected by the VECP.

**6.** "Negative instant contract savings" are "the increase in the cost or price of this contract

when the acceptance of a VECP results in an excess of the Contractor's allowable development and implementation costs over the product of the instant unit cost reduction multiplied by the number of instant contract units affected." *Id.*

clude $264,362.62 as its share of savings on 14,000 units delivered under Option II of the contract.

## DISCUSSION

The government argues this court lacks jurisdiction over AAI's claim because AAI never submitted the amended claim to the contracting officer and that this court also lacks jurisdiction over AAI's request for declaratory judgment.

*Jurisdiction over First Amended Complaint*

■ Under the Contract Disputes Act ("CDA"), the Claims Court does not have jurisdiction over claims which a contractor has failed to present to the agency's contracting officer. *SMS Data Products Group, Inc. v. United States,* 19 Cl.Ct. 612, 614 (1990); *Paragon Energy Corp. v. United States,* 227 Ct.Cl. 176, 192, 645 F.2d 966, 976 (1981); 41 U.S.C. §§ 605(a), 609(a)(1) (1988). Claims of more than $50,000 must be certified by the contractor. *W.M. Schlosser Co. v. United States,* 705 F.2d 1336, 1338 (Fed.Cir.1983); 41 U.S.C. § 605(c). In enacting the CDA, "Congress required contractors to file all claims with the contracting officer to provide the Government with an opportunity to settle the case or otherwise avoid unnecessary litigation." *SMS Data Products Group,* 19 Cl.Ct. at 614. The government argues that AAI never submitted the claim as now contained in the first amended complaint to the agency's contracting officer and that therefore this court does not have jurisdiction.

Nonetheless, "[o]n appeal ... in a direct access action in the Claims Court, a contractor may increase the amount of his claim ..." *Santa Fe Engineers, Inc. v. United States,* 818 F.2d 856, 858 (Fed.Cir. 1987). "The excess quantum must, how-

ever, spring from the same certified claim. Plaintiff may not seek damages for a new claim—a claim not yet submitted to and decided by the contracting officer." *SMS Data Products Group,* 19 Cl.Ct. at 615 (citing *Tecom, Inc. v. United States,* 732 F.2d 935, 937–38 (Fed.Cir.1984); *Glenn v. United States,* 858 F.2d 1577, 1580 (Fed. Cir.1988); *LDG Timber Enterprises, Inc. v. United States,* 8 Cl.Ct. 445, 452–54 (1985)). The Claims Court has jurisdiction over an enlarged claim if: (1) "the increase in the amount of the claim is based on the *same set of operative facts* previously presented to the contracting officer;" and (2) "the contractor neither knew nor reasonably should have known, at the time when the claim was presented to the contracting officer, of the factors justifying an increase in the amount of the claim." *Kunz Construction Co. v. United States,* 12 Cl.Ct. 74, 79 (1987) (emphasis added); *LDG Timber Enterprises,* 8 Cl.Ct. at 452– 54; *see also J.F. Shea Co. v. United States,* 4 Cl.Ct. 46, 54–55 (1983).

AAI asserts that requests for negative instant contract savings, if any, and for savings on the 14,000 units under Option II have always been elements of its claim. The only changes were that the first amended complaint increased the claim for negative instant contract savings from zero to $504,875.75 and changed the request for a share of savings on the 14,000 units to $264,362.62. This court agrees that AAI consistently alerted the contracting officer to the possibility that implementation costs would exceed instant contract savings, leaving negative instant contract savings, and that AAI was claiming savings on the 14,000 units under Option II.[7] Therefore, the question before this court is whether the increase in the amount of the claim is based on the same set of operative facts presented to the contracting officer.[8]

---

**7.** The original complaint sought payment for AAI's share of future contract savings resulting from the VECP, including future contract savings on 48,000 units of anticipated production, and future contract savings on 14,000 units under Option II. At the time, AAI did not know the dollar amount of savings on the 14,000 units. The amount of the savings on the 14,000 units was particularized by the exercise of Op-

tion II and then included in the first amended complaint as a request for $264,362.62.

**8.** The government does not seriously assert that the contractor knew or reasonably should have known, at the time when the claim was presented to the contracting officer, of the factors justifying an increase in the amount of the claim. *Kunz Construction,* 12 Cl.Ct. at 79; *LDG Timber*

The determination of whether claims are merely various facets of a solitary claim involving a common set of operative facts or actually several individual claims being raised together does not hinge upon the contractor's depiction but rather upon whether the demand for relief arose out of essentially interconnected conduct, services, and same or closely-connected facts.

*Spirit Leveling Contractors v. United States*, 19 Cl.Ct. 84, 91 (1989) (citing *Walsky Construction v. United States*, 3 Cl.Ct. 615, 618–19 (1983)).

■ The claim submitted to the contracting officer and contained in the original complaint as well as the claim in the first amended complaint are based upon the contention that the government accepted AAI's VECP. This is AAI's theory of entitlement. Both the original complaint and the first amended complaint rely on the same theory of entitlement and same set of operative facts: that the redesign effort was undertaken pursuant to the VECP, that the government either actually or constructively accepted the VECP, and that AAI is entitled to share in the resulting acquisition savings in the manner specified by the Value Engineering Clause. This theory is supported by the fact that the basis of the contracting officer's decision was that the redesign effort was not a true VECP and that the government had not accepted the alleged VECP. The contracting officer addressed only the theory of entitlement, which is common to both the original and amended complaint, and decided that there was no VECP. However, the possibility of negative instant contract savings was raised by AAI, as was the request for savings on the 14,000 units. The demand for relief in both the original complaint and the amended complaint "arose out of essentially interconnected conduct, services, and same or closely-connected facts."

*Enterprises,* 8 Cl.Ct. at 454; *J.F. Shea,* 4 Cl.Ct. at 54–55. The government has not submitted evidence establishing that AAI knew or should have known of the factors justifying the claim increase. At oral argument, the government

The government contended at oral argument that if the contracting officer had known that there were negative instant contract savings, the contracting officer might have agreed to settle, rather than deny, the claim. This counsels, the government contends, towards dismissing the complaint because the Contract Disputes Act requires submitting all claims to the contracting officer in order to foster settlement and avoid unnecessary litigation. *See SMS Data Products Group*, 19 Cl.Ct. at 614. The government's argument is undermined by the fact that the contracting officer denied the very existence of the VECP. In fact, the government throughout has steadfastly denied the applicability of the Value Engineering Clause to the instant contract. The fact that the contracting officer chose to discuss only the theory of entitlement, and not AAI's entitlement or damages, does not change the fact that the claims in the original complaint and in the first amended complaint arise out of a common set of operative facts. The theory of entitlement and facts that were before the contracting officer are now before this court: a claim by AAI to share in the net acquisition savings resulting from the alleged acceptance by the government of AAI's VECP. Additional information, available after the contracting officer's decision, required a recalculation of AAI's claimed share of net acquisition savings. However, the increase in the amount of the claim is based on the same set of operative facts presented to the contracting officer. This court has jurisdiction over AAI's enlarged claim.

*Declaratory Judgment*

■ The government also asserts that this court lacks jurisdiction, under *United States v. King*, 395 U.S. 1, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969), *rev'g* 182 Ct.Cl. 631, 390 F.2d 894 (1968), and related cases, over what the government contends is a request for declaratory judgment. According to the government, AAI is claiming future

maintained only that this test did not come into play because AAI could not show that the increase in the amount of the claim is based on the same set of operative facts.

contract savings on units that have yet to be produced. This assertion is only partially true. The original complaint sought recovery of AAI's share of future contract savings resulting from the VECP, including future contract savings on 48,000 units of anticipated production, and future contract savings on 14,000 units under Option II. At the time, AAI did not know the dollar amount of savings on the 14,000 units. The amount of the savings on the 14,000 units was particularized by the exercise of Option II and then included in the first amended complaint. The claim for savings on the 14,000 units is not a request for declaratory judgment. AAI's claim for $264,362.62 in net acquisition savings resulting from the production of 14,000 units under Option II represents AAI's share in acquisition savings already realized under the contract.

However, the 48,000 units, with respect to which AAI claims future contract savings, have not been produced. These savings have not been realized. AAI seeks a declaratory judgment that it is entitled to these future contract savings not yet realized. The Supreme Court held in *United States v. King* that the Court of Claims did not have authority to issue declaratory judgments, absent an express grant from Congress. 395 U.S. at 5, 89 S.Ct. at 1503. There is a division of authority within the Claims Court as to whether the enactment of the Contract Disputes Act and amendments to the Tucker Act[9] provided the court with the authority to render declaratory judgments in certain circumstances. One line of cases maintains that the court

does not have jurisdiction under the CDA to render declaratory judgments on post-award contract claims without a monetary damage claim.[10] A contrary line of cases suggests that the Claims Court has jurisdiction over some post-award appeals regarding government claims, including contractor appeals from default terminations even when the contractor does not seek specific monetary relief.[11] However, the plaintiff's claim in this case is not a government claim, unlike the cases which held that the Claims Court had jurisdiction. Therefore, this court concludes that it does not have jurisdiction over AAI's claim for future contract savings on the 48,000 units not yet produced.

## CONCLUSION

This court has jurisdiction over the plaintiff's claim for $504,875.75 in negative instant contract savings and its claim for $264,362.62 in savings on the 14,000 units already produced under the contract. Because the increase in the amount of the claim is based on the same set of operative facts presented to the contracting officer, the jurisdictional requirements under the Contract Disputes Act are met. The plaintiff's claim for its share of acquisition savings already realized under the contract is not a request for declaratory judgment, so this court has jurisdiction. However, this court does not have jurisdiction to render judgment with respect to future contract savings not yet realized by the government under the contract. For the foregoing reasons, this court grants the defendant's mo-

---

9. In 1982, Congress amended § 1491(a)(2) of the Tucker Act to add the following sentence: "The Court of Claims [now the Claims Court] shall have jurisdiction to render judgment upon any claim by or against, or dispute with, a contractor arising under the Contract Disputes Act of 1978." 28 U.S.C. § 1491(a)(2) (1988).

10. *See, e.g., Continental Heller Construction v. United States*, 21 Cl.Ct. 471 (1990); *Overall Roofing & Construction, Inc. v. United States*, 20 Cl.Ct. 181 (1990); *SGW, Inc. v. United States*, 20 Cl.Ct. 174 (1990); *Industrial Coatings, Inc. v. United States*, 11 Cl.Ct. 161 (1986); *Alan J. Haynes Construction Systems, Inc. v. United States*, 10 Cl.Ct. 526 (1986); *Williams International Corp. v. United States*, 7 Cl.Ct. 726 (1985).

11. *See, e.g., Claude E. Atkins Enterprises, Inc. v. United States*, 15 Cl.Ct. 644, 647 (1988); *see also Crippen & Graen Corp. v. United States*, 18 Cl.Ct. 237, 240 (1989); *Russell Corp. v. United States*, 15 Cl.Ct. 760, 762 (1988). The logic of these cases is that a default termination is a government claim which is not required to be submitted to the contracting officer, that the amendment to § 1491(a)(2) of the Tucker Act permits the Claims Court to issue declaratory judgments, and that the enactment of the CDA and the 1982 amendment to § 1491(a)(2) vitiated the holding in *United States v. King*.

tion to dismiss with respect to the plaintiff's claim for future contract savings not yet realized by the government, but denies the defendant's motion to dismiss with respect to all other issues.