**CURLEY, INCORPORATED**

v.

**The UNITED STATES.**

No. 340–83C.

United States Claims Court.

Sept. 25, 1984.

---

8. Complaint, ¶ 7.

Russell S. Gill, Biloxi, Miss., for plaintiff.

M. Susan Burnett, Washington, D.C., with whom were Asst. Atty. Gen. J. Paul McGrath, David M. Cohen, and Thomas W. Petersen, Washington, D.C., for defendant; Lt. Col. Oris David Dearborn, Dept. of the Air Force, Washington, D.C., of counsel.

## ORDER ON DEFENDANT'S MOTION TO DISMISS AND PLAINTIFF'S CROSS–MOTION FOR REMAND

WHITE, Senior Judge.

In the complaint, the plaintiff, Curley, Incorporated (Curley), seeks damages in the amount of $95,299.61 because of an alleged breach by the Government of a contract under which Curley repaired water tanks and repainted several structures at Keesler Air Force Base, Mississippi.

The case is now before the court on the defendant's motion asking the court to dismiss, for lack of jurisdiction, the portion of the complaint which seeks damages in excess of $31,594.64, or, in the alternative, to dismiss the complaint in its entirety, and on the plaintiff's cross-motion that the case be remanded to the contracting officer. Counsel for the parties have presented oral arguments to the court.

### The Facts

The contract in question was awarded on October 6, 1980, by a contracting officer of the Department of the Air Force to Curley and C.S. & W. Contractors, Inc. Later, Curley purchased the interest of C.S. & W. Contractors, Inc., in the project; and, consequently, Curley is the sole owner of the claim involved in the present litigation.

Under one of the provisions of the contract, the Air Force promised to supply to the contractor the water and electricity needed for the project.

Work on the project commenced February 1, 1981. When Curley connected its equipment to the Air Force's transformer banks, the phased transformers could not maintain the increased power load. One transformer failed; and Curley procured a diesel-driven air compressor to finish the job.

On February 18, 1982, Curley filed with the contracting officer a claim in the amount of $31,594.64, allegedly based on the rental cost of the diesel-driven air compressor and the cost of the delay caused by the Air Force's failure to provide the needed power. As the claim was for an amount less than $50,000, it was not certified by the contractor. The contracting officer rejected this claim in a final decision dated June 28, 1982, holding that the Government had fulfilled its contractual obligation respecting the furnishing of power to the contractor.

Thereafter, on May 25, 1983, the plaintiff filed its complaint in this court under the so-called direct access provision of the Contract Disputes Act (41 U.S.C. § 609(a)(1) (1982)). The complaint, which seeks to recover $95,299.61 because of the Air Force's alleged failure to provide power needed for the project, was accompanied by a certificate asserting that the claim is made in good faith, that the supporting data are accurate and complete, and that the

amount requested accurately reflects the contract adjustment for which Curley believes the Government is liable.

### Discussion

The defendant's motion is based principally upon the following requirements in the Contract Disputes Act:

§ 605. Decision by contracting officer

(a) Contractor claims

All claims by a contractor against the government relating to a contract shall be in writing and shall be submitted to the contracting officer for a decision. The contracting officer shall issue his decisions in writing, and shall mail or otherwise furnish a copy of the decision to the contractor.   *   *   *

\*       \*       \*       \*       \*       \*

(c) Amount of claims; certification * * *

(1) * * * For claims of more than $50,-000, the contractor shall certify that the claim is made in good faith, that the supporting data are accurate and complete to the best of his knowledge and belief, and that the amount requested accurately reflects the contract adjustment for which the contractor believes the government is liable.

The defendant asserts in the brief supporting its motion that as no claim in the amount of $95,299.61, accompanied by the certificate prescribed in section 605(c)(1) for claims in excess of $50,000, was ever submitted to the contracting officer and, consequently, the contracting officer has never rendered a decision on such claim, the court does not have jurisdiction to consider the complaint insofar as it seeks damages in the amount of $95,299.61. The defendant cites the statement in *Paragon Energy Corp. v. United States,* 227 Ct.Cl. 176, 177, 645 F.2d 966, 967 (1981), to the effect that a decision by the contracting officer is the "linchpin" for appealing a claim under the Contract Disputes Action.

The defendant concedes that the plaintiff's initial claim for $31,594.64 was properly submitted to the contracting officer and was the subject of a decision by the contracting officer; and, accordingly, that the court has jurisdiction to consider the complaint insofar as it seeks damages in the amount of $31,594.64.

The defendant concludes that "once a contractor has submitted a 'claim' to the contracting officer, a contractor may not later augment that claim after the final decision of the contracting officer"; and that "plaintiff's claim for more than $31,-594.64 is barred."

Just why the decision of a contracting officer should be immutable, whereas court decisions are subject to reconsideration, review, withdrawal, etc., under proper circumstances, is not explained clearly by the defendant.

■ It has been clearly established by earlier court decisions that, under the statutory provisions just quoted, all claims in excess of $50,000 must be certified by the contractor upon submission to the contracting officer; that certification is a jurisdictional prerequisite to a subsequent direct-access action by a government contractor in this court; and that the result of a failure to certify a claim for more than $50,000 is dismissal of the complaint. *Palmer & Sicard, Inc. v. United States,* 4 Cl.Ct. 420, 422 (1984), and cases cited.

The problem in this case is that the contractor's claim, when submitted to the contracting officer, was for less than $50,000 and, accordingly, there was no statutory requirement that it be certified to the contracting officer; whereas, when the complaint was subsequently filed in this court, the contractor had increased the amount of the claim to more than $50,000.

It has previously been necessary for this court to deal with a problem under the Contract Disputes Act that was rather similar to the problem in the present case.

In *J.F. Shea Co. v. United States,* 4 Cl.Ct. 46 (1983), a contractor who had built an aqueduct for the Government submitted to the contracting officer a certified claim in the amount of $3,940,227; and later, upon the denial of the claim by the contracting officer, the contractor filed a com-

plaint in this court seeking damages in the amount of $5,614,962. Before the court, the defendant contended (*inter alia*) that the court lacked jurisdiction because the total amount of the contractor's claim had not been properly submitted and certified to the contracting officer in accordance with 41 U.S.C. § 605.

The court in *Shea* rejected the defendant's jurisdictional defense. In doing so, the court stated in part as follows (4 Cl.Ct. at 54):

> * * * [A]fter certification is complete, a contractor is not precluded from changing the amount of the claim or producing additional data in support of increased damages. *Newell Clothing Co.*, ASBCA No. 24482, 80–2 BCA ¶ 14,774 at 72,916. A plaintiff must be precluded, however, from raising any new *claim* before this court which was not previously presented and certified to the contracting officer for decision. *Aden Music Company*, ASBCA No. 26361, 82–1 BCA ¶ 15,723 at 77,777 * * *. The certification requirement assures that the plaintiff is submitting a claim in an amount it *then* honestly believes is due and that the data furnished *at the time of certification* are accurate and complete to the best of plaintiff's knowledge and belief. *Newell Clothing Co.*, ASBCA No. 24482, 80–2 BCA ¶ 14,774 at 72,916.
>
> In the instant case, the increased amount of Shea's claim which was not submitted to the contracting officer for decision does not represent a new 'claim' * * * [Emphasis in original.]

In the present case, as in *Shea*, the plaintiff's claim before the court is the same claim that the plaintiff presented to the contracting officer, *i.e.*, that the plaintiff sustained damages because the Government allegedly breached its contractual obligation to provide the plaintiff with the electric power needed to perform the contract. The complaint states, however, that "[s]ince submission of its request for an equitable adjustment on February 18, 1982, Plaintiff has identified other costs which are attributable to the Defendant's failure to provide electricity, totalling $63,426.17. * * * " The difference between the two cases is that in *Shea* the claim submitted to the contracting officer was for more than $50,000 and was certified to the contracting officer, while in this case the claim submitted to the contracting officer was for less than $50,000 and was not certified to the contracting officer.

In the present case, however, there was no statutory requirement that the claim, when submitted to the contracting officer, be certified. In this respect, the claim was entirely proper when submitted to the contracting officer; and after the adverse action by the contracting officer on its claim, this contractor, like the one in *Shea*, is seeking before the court a larger sum in damages than the sum requested of the contracting officer. The explanation is that, after the initial submission to the contracting officer, the plaintiff has "identified" additional costs which are allegedly attributable to the defendant's asserted breach of contract. Thus, the court is presented in this case with the same basic problem that was presented in *Shea*.

The defendant's objection that the plaintiff's present claim in the amount of $95,229.61 has never been certified to the contracting officer, and has not been the subject of a decision by him, could be met by having the plaintiff resubmit its claim, now in the increased amount of $95,299.61, to the contracting officer, with the same certification that the plaintiff filed with the court, and perhaps with a request that the contracting officer withdraw his previous decision and reconsider the plaintiff's claim. Such a procedure would merely emphasize form over substance and be a useless waste of time. The contracting officer has already concluded that the Government did not breach its contractual obligation to provide the electric power needed by the plaintiff in the performance of the contract; and the addition of a certificate and more damages to the claim would not affect this.

■ As the plaintiff is presenting to the court precisely the same claim that it presented to the contracting officer (except

for the increased amount of the damages claimed), and as there was no statutory requirement that the claim be certified when it was submitted to the contracting officer, it appears that the sensible procedure would be for the court to retain jurisdiction of the case and proceed to determine whether the plaintiff's failure to submit the full amount of the claim, with a proper certification, to the contracting officer in the first instance was or was not intentional (*e.g.*, in order to avoid the certification requirement) or due to neglect or carelessness on the part of the plaintiff; and if it appears that the answer to that inquiry is in the negative, to determine the merits of the plaintiff's claim.

### Conclusion

For the reasons previously stated, it is concluded that both the defendant's motion to dismiss and the plaintiff's cross-motion for an order of remand should be, and they are hereby, denied.

IT IS SO ORDERED.