**MIYA BROTHERS CONSTRUCTION CO., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 139–85C.

United States Claims Court.

March 24, 1987.

On Motion for Reconsideration
April 16, 1987.

Wilford A. Beesley, Salt Lake City, Utah, for plaintiff.

John S. Groat, Washington, D.C., with whom was Asst. Atty. Gen. Richard K. Willard, for defendant.

## ORDER

MOODY R. TIDWELL, III, Judge:

Defendant filed a motion for partial summary judgment requesting the court to dismiss a portion of the claims being litigated. Plaintiff opposes.

## FACTS

On January 21, 1980 defendant, through the Federal Highway Administration (FHWA), awarded a contract pursuant to section 2 of the Small Business Act, amending section 8(a), 15 U.S.C. § 637(a), to plaintiff for the construction of approximately eight miles of unpaved road, known as Boulder Mountain Road, near Grover, Utah.

Plaintiff completed the road on August 28, 1981 and was paid $2,526,385.99 after executing a release which discharged all obligations to the government except for the reservation of certain claims that are the subject of this litigation. Plaintiff reserved seven claims in the release totalling $693,574.99, including an 80–day extension for time of performance, plus claims of its subcontractor, LaMar D. Construction Co., in the amount of $196,868.12.[1]

A year later, on June 23, 1983 plaintiff submitted a list of "revised" claims. Defendant alleges that the revised claims contained new claims not reserved in the release, as well as increased claims above the dollar amounts reserved on claims in the release.

The contracting officer issued a final decision on plaintiff's claims which considered only those claims, time extensions, and dollar amounts originally reserved by plaintiff in the release. The FHWA withheld $30,-

---

1. There is confusion on the amount of the claim. Plaintiff's release voucher reserved $693,574.99. Defendant, in the release which it drafted, reserved $396,707.77 for plaintiff and $196,868.12 for LaMar. The latter two figures total $593,574.89. This matter will have to be cleared up eventually but need not be addressed at this time.

000 from the final payment as liquidated damages for late performance. Defendant argued that the June 22, 1982 release discharged all obligations of the government except for the time and money claims specifically reserved by plaintiff and that to the extent the separate counts in the complaint set out claims not reserved, or in excess of those claims, they are barred by the release. Defendant seeks dismissal of the latter claims and all amounts in excess of the claims reserved in the release.

Plaintiff claims that only one new claim was submitted after it executed the release, the "benching" claim, which was eventually paid by defendant. During the course of negotiating the benching claim, some, if not all of the other claims, were discussed. In its letter of June 23, 1983 which first presented the benching claim, plaintiff states that it clarified its reserved claims in the context of the post-release negotiations during which time plaintiff realized that it had understated its claims. The clarification contained the increased value claims which, in turn, were included in the complaint.

## DISCUSSION

■ Defendant argues that plaintiff is barred from asserting claims that were not reserved in the release and from asserting claims in excess of the amount specifically reserved. As a general rule, the filing of a release by a contractor reflects the contractor's unqualified acceptance and agreement with its terms and is binding on both parties. *Clark Mechanical Contractors, Inc. v. United States*, 5 Cl.Ct. 84, 86 (1984). Moreover, a contractor may reserve claims from the release but if the contractor fails to do so, absent certain mitigating factors, it will preclude the contractor from pressing those "other" claims based on events prior to execution of the release. *Clark* at 86 (citing *H.L.C. & Assocs. Constr. Co. v. United States*, 176 Ct.Cl. 285, 293, 367 F.2d 586, 590 (1966)).

■ The mitigating factor here, so says plaintiff, is that defendant continued to discuss the claims made in its letter of December 18, 1981 after execution of the release and because defendant accepted, discussed, confessed liability and paid the benching claim which was first brought to the attention of the contractor officer one year after execution of the release. Thus, alleges plaintiff, the government never considered that the release constituted an abandonment by plaintiff of its later claims. In support of its position, plaintiff cites *J.G. Watts Constr. Co. v. United States*, 161 Ct.Cl. 801 (1963), which recognizes that there are "special and limited situations in which a claim may be prosecuted despite the execution of a general release." *Id.* at 806. One of the exceptions, and the only exception put forward by plaintiff, is where the conduct of the parties in continuing to consider claims after execution of the release evidences that they never considered the release as constituting an abandonment of the claims. Under those circumstances, the release will not be held to bar the prosecution of a claim. *Watts*, however, cites to *Winn-Senter Construction Co. v. United States*, 110 Ct.Cl. 34, 75 F.Supp. 255 (1948), as authority for the exception to the general rule. *Watts* at 807. In *Winn-Senter*, the contractor executed the release while its claim was under consideration by the government and the consideration continued after the release had been given. In that situation, the court found that the conduct of both parties indicated that the claim had not been abandoned or forfeited. *Id.*, 110 Ct.Cl. at 65–66, 75 F.Supp. at 260. The court also notes that the release in *Winn-Senter* was based, at least in part, on coercion by the government. Plaintiff also cites *Metric Constr. Co. v. United States*, 1 Cl.Ct. 383 (1983), for the same proposition, *i.e.*, the conduct of the parties after execution of the release is proof that they never construed the release as an abandonment of the claim. *Id.* at 396–97.

On a different tack, plaintiff points to *J.F. Shea Co., Inc. v. United States*, 4 Cl.Ct. 46 (1983), which held that once a complaint has been filed and discovery undertaken, data may come of notice to plaintiff, which indicates it understated the value of its claim. *Id.* at 54. In that circumstance, plaintiff may change the amount of

the claim, but it may not present a new claim because it would not have met the jurisdictional prerequisite in this court of being submitted to and certified by the contracting officer. *Shea* continues, that "the increased amount of Shea's claim which was not submitted to the contracting officer for decision does not represent a 'new claim.' " *Id.* (citing *Spradlin Corporation,* ASBCA No. 23974, 81-2 BCA ¶ 15,423 at 76,430-31 (1981)).

In the case at bar, plaintiff alleged that only one new claim was filed after the general release—the benching claim. That claim was paid by defendant and is thus not before the court. If plaintiff is correct that the benching claim was the only new claim, plaintiff's motion should be denied. As to the increased claims, the court is of the opinion that they may be pled. The increased dollar value was before the contracting officer even though he refused to consider it. This court has jurisdiction to hear and decide the value of each claim. We are persuaded by the holdings in *Shea* and *Spradlin Corporation* that once a claim is presented to this court, the value of the claim may increase (or decrease) based upon information gained from the moment the claim is first presented to the government until today, and it may even change tomorrow. Plaintiff, of course, must still prove his claim, including its worth.

## CONCLUSION

◼ The court finds that plaintiff may properly increase the value of its claims notwithstanding how it valued them at the time of execution of the release and that plaintiff has apparently not filed new claims, and indeed may not. Plaintiff may only prosecute those claims it reserved in the release. Since the benching claim has been disposed of administratively, we will withhold any comment thereon. If it should appear at a later date that plaintiff has presented a "new" claim, as opposed to "clarifying" the claims it reserved, that claim will be dismissed with prejudice and with costs to defendant. The process of determining whether a claim is a "new" claim or not involves consideration of the facts surrounding each claim. That being the case, the court cannot, at this time, grant defendant's motion for partial summary judgment. Accordingly, defendant's motion for partial summary judgment is denied in its entirety.

IT IS SO ORDERED.

## ON MOTION FOR RECONSIDERATION

On April 7, 1987 defendant filed a motion for reconsideration pursuant to RUSCC 59(b), of the court's March 24, 1987 Order which denied defendant's motion for summary judgment. In the March Order the court limited the claims that could be litigated before the court to those that were reserved from plaintiff's release of claims but permitted plaintiff to increase the alleged value of those claims.

Briefly, on August 28, 1981, plaintiff completed the project and executed a release of all claims it had, or might have had, except for certain claims reserved from the release. A year later plaintiff submitted a list of revised claims, which defendant alleged contained new claims and raised the value of the individual claims over those originally reserved. The sole issue today is the permissibility of the plaintiff's increase in alleged value of the reserved claims.

Defendant cites several cases in support of its motion for reconsideration that plaintiff should be limited in its suit to seeking the value of its reserved claims as opposed to any increase thereof. In *H.L.C. & Associates Construction Co. v. United States,* 176 Ct.Cl. 285, 293-95, 367 F.2d 586, 590-92 (1966), our predecessor court held that a contractor who executes a general release cannot thereafter successfully maintain a suit, either for damages or for amounts allegedly due under the contract based upon events which occurred prior to execution of the release. The court found that the release was too general in nature and that plaintiff there had failed to reserve any claims whatsoever from the release. Quantum was not even in issue. More on point, defendant cited *G.M. Shupe, Inc. v. United States,* 5 Cl.Ct. 662, 675 (1984) and

*A.L. Coupe Construction Co. v. United States*, 134 Ct.Cl. 392, 399, 139 F.Supp. 61, 65 (1956), both holding that plaintiff is barred from pleading for any amounts in excess of the value specifically identified in the release. Defendant also invited the court to read *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387 (Fed.Cir. 1987). The United States Court of Appeals for the Federal Circuit in *Mingus* stated that the "failure to submit specific claims in a stated amount prior to final payment, all as required by the contract, entitles the government to summary judgment as a matter of law." *Id.* at 1396.

■ The court agrees with *Mingus* and *H.L.C.* but respectfully disagrees with *Shupe* and *Coupe.* In our March 24, 1987 Order, this court decided that the better course was that set forth in *J.F. Shea Co. v. United States*, 4 Cl.Ct. 46 (1983), *aff'd on other grounds*, 754 F.2d 338 (Fed.Cir. 1985), to wit:

> This court and its predecessor have consistently held that it is a jurisdictional prerequisite to a direct access suit in this court that the claim at issue be first certified and submitted in writing to the contracting officer pursuant to 41 U.S.C. §§ 605(a), 605(c)(1). *Grad Partnership v. United States*, 1 Cl.Ct. 616, 619 (1982); *Skelly and Loy v. United States* [231 Ct.Cl. 370], 685 F.2d 414, 417 (Ct.Cl. 1982); *W.H. Moseley Co. v. United States* [230 Ct.Cl. 405] 677 F.2d 850, 851 (Ct.Cl.1982). However, as litigation in this court includes pretrial proceedings, including discovery, it must be recognized that additional facts may be developed which could increase or decrease the amount of a claim. It would be most disruptive of normal litigation procedure if any increase in the amount of a claim based upon matters developed in litigation before the court had to be submitted to the contracting officer before the court could continue to a final resolution on the claim. In this circumstance, it has been ruled that, after certification is complete, a contractor is not precluded from changing the amount of the claim or producing additional data in support

of increased damages. *Newell Clothing Co.*, ASBCA No. 24482, 80–2 BCA ¶ 14,-774 at 79,916.... The certification requirement assures that the plaintiff is submitting a claim in an amount it *then* honestly believes is due and that the data furnished *at the time of certification* are accurate and complete to the best of plaintiff's knowledge and belief. *Newell Clothing Co.*, ASBCA No. 24482, 80–2 BCA ¶ 14,774 at 72,916.

*Shea*, 4 Cl.Ct. at 54 (emphasis in original).

The court considers this analysis, regarding the assertion of a claim beyond the amount presented to the contracting officer, to be equally applicable to the effect of an increased claim under a release, because the exact amount of a claim is considered irrelevant to the general principle that a monetary claim has been properly excepted through a release. *See Tecom, Inc. v. United States*, 732 F.2d 935, 938 (Fed.Cir. 1984) (referring to *Shea* on the certification of claims requirement). This court finds no violation in either the letter or purpose of a release to push contractors into being careful and reasonably precise in stating the *amount* of excepted claims in the release. *See id.* at 937. The increased amount of plaintiff's claim that was not submitted to the contracting officer for decision does not represent a new "claim." *See Curley, Inc. v. United States*, 6 Cl.Ct. 274, 276–78 (1984); *Spradlin Corp.*, ASBCA No. 23974, 81–2 BCA ¶ 15,423 at 76,430–31 (1981). Thus, defendant's alleged distinction between cases involving an increased claim under a release and cases involving an increased claim that was not presented to the contracting officer is meritless. The factual basis for the claims are identical to the claims that were filed on August 28, 1981, after being certified to the contracting officer. Plaintiff has simply presented additional evidence purporting to justify a higher dollar worth of the original claims. *LDG Timber Enter., Inc. v. United States*, 8 Cl.Ct. 445, 452 (1985) (allowing the presentment of an increased claim "as the result of newly discovered or newly developed evidence.") As we stated in our Order of March 24, 1987, "plaintiff, of course,

must still prove his claim, including its worth."

Defendant's motion is denied. This is the law of the case.

IT IS SO ORDERED.