KUNZ CONSTRUCTION CO., INC., Plaintiff,

v.

UNITED STATES of America, Defendant.

No. 83–84–C.

United States Claims Court.

March 9, 1989.

As Amended April 5, 1989.

---

Leonard J. Gittinger, Jr., San Antonio, Tex., for plaintiff.

Frank B. Flink, Jr., with whom were Asst. Atty. Gen. Richard K. Willard, David M. Cohen and Thomas W. Petersen, Washington, D.C., for defendant.

### OPINION and ORDER

TURNER, Judge.

Kunz Construction Company, Inc., having prevailed on the merits,[1] has applied under the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412(d), for the attorney fees and expert witness expense it incurred prosecuting this contract action. Plaintiff had sought damages of $29,178.40 and was ultimately awarded $8,354.17. Kunz seeks an award of $64,492 ($64,292 for attorney fees and $200 for an expert witness report). For reasons hereafter set forth, plaintiff's application is granted in part and denied in part. The amount of plaintiff's award shall be determined according to principles stated below.

### I

The suit for which plaintiff now seeks EAJA monies arose from its contract with defendant for the construction of a cancer treatment facility at Lackland Air Force Base in San Antonio, Texas. The treatment facility was an addition to Wilford Hall Medical Center, an Air Force hospital already in existence at Lackland. Al-

though the $1,035,089 contract covered construction of the entire cancer treatment facility, dispute arose only with respect to one room in that facility. That room, BA–109, is a lead-lined room designed for radiation therapy. The central controversy, which became the liability issue at trial, concerned the electrical work required in room BA–109. *Kunz Construction Co. v. United States,* 12 Cl.Ct. 74, 75 (1987).

Apart from liability, on which plaintiff prevailed, Kunz' suit also involved jurisdictional and damages issues. Defendant prevailed on two of the three jurisdictional questions decided by the court. Plaintiff prevailed in part on the damages issues.

### II

Kunz asserts, as it must to recover under the EAJA, that it is a "prevailing party" and that the position of the United States, both at the agency and litigation levels, was not "substantially justified." 28 U.S.C. § 2412(d)(1)(A). The government concedes that Kunz was a "prevailing party" on some issues, but urges that Kunz cannot recover fees for time it spent on motions, issues and phases of the litigation in which it did not prevail. Defendant further contends that even where plaintiff prevailed, no EAJA monies can be awarded since defendant's position was "substantially justified" and that, in any event, "special circumstances" present in this case would render any EAJA award unjust. *Id.* Finally, defendant asserts that plaintiff's application is defective because (1) hourly rates claimed are too high, (2) the total amount of the claim is excessive given the nature and outcome of the suit, and (3) fees and expenses are not adequately "allocated" to show time spent on prevailing issues.

### III

It will assist analysis to set forth the principles of EAJA jurisprudence to be applied. The statute itself provides:

> [A] court shall award to a prevailing party other than the United States fees

and other expenses ... incurred by that party in any civil action ... brought by or against the United States ... unless the court finds that the position of the United States was substantially justified or that special circumstances would make an award unjust.

28 U.S.C. § 2412(d)(1)(A). Congress had a clear purpose when it passed the EAJA. Of paramount motivation was Congress' concern that certain individuals and small businesses "may be deterred from seeking review of, or defending against unreasonable governmental action because of the expense involved in securing the vindication of their rights." H.R.REP. NO. 1418, 96th Cong., 2d Sess. 5, *reprinted in* 1980 U.S.CODE CONG. & ADMIN.NEWS 4953, 4984, 4984. Especially troubling to Congress was its recognition that "when the cost of contesting a Government [action] exceeds the amount at stake, [many individuals and small businesses have] no realistic choice and no effective remedy. In these cases, it is more practical to endure an injustice than to contest it." H.R.REP. NO. 1418 at 9, 1980 U.S.CODE CONG. & ADMIN.NEWS at 4988. Accordingly, Congress crafted EAJA to "reduce the detriments and disparity by entitling certain prevailing parties to recover an award of attorney fees, expert witness fees, and other expenses against the United States." H.R.REP. NO. 1418 at 6, 1980 U.S.CODE CONG. & ADMIN.NEWS at 4984.

The statute does more than merely "permit" or "allow" an award of fees and expenses to a qualified prevailing party[2] (verbs suggested by defendant in its Opposition); rather, EAJA *requires* such an award, *unless* the *government* shows that its position was "substantially justified" or that "special circumstances" would make an award unjust. 28 U.S.C. § 2412(d)(1)(A); *Gavette v. Office of Personnel Management,* 808 F.2d 1456, 1465

(Fed.Cir.1986). Congress felt it "particularly appropriate to place the burden on the government to prove the reasonableness of its actions," in the belief that so doing would "encourage parties to contest action which they believe to be unreasonable and thereby serve to refine public policy." H.R.REP. NO. 1418 at 18, 1980 U.S.CODE CONG. & ADMIN.NEWS at 4997.

With the above-described philosophical underpinnings in mind, the first step in addressing any EAJA application is to determine whether the applicant qualifies as a "prevailing party" within the meaning of the act. The Supreme Court has adopted a "generous formulation" for what constitutes a prevailing party. *Hensley v. Eckerhart,* 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983); *Babenco Development Co., Inc. v. United States,* 15 Cl.Ct. 637, 639 (1988). Defendant does not dispute that Kunz has crossed this statutory threshold.[3]

The next task is to determine whether the government has met its burden of showing that its position both in litigation and at the agency level was "substantially justified." *See* 28 U.S.C. § 2412(d)(2)(D). The Supreme Court recently construed the EAJA's phrase "substantially justified" to mean

> 'justified in substance or in the main,' that is, justified to a degree that could satisfy a reasonable person [, which] is no different from the 'reasonable basis both in law and fact' formulation [heretofore] adopted by [many of the circuits].

*Pierce v. Underwood,* — U.S. —, 108 S.Ct. 2541, 2550, 101 L.Ed.2d 490 (1988).

In cases like this one where the government's "position" is composed of several legal arguments of varying merit, a court's "substantial justification" analysis requires it to make at least one, possibly two addi-

---

**2.** To be entitled to fees under EAJA, a corporation's net worth cannot have exceeded $7 million ($2 million for individuals), nor can it have employed more than 500 persons, at the time the civil action was filed. 28 U.S.C. § 2412(d)(2)(B). Kunz' application includes an affidavit attesting to its satisfaction of these criteria.

**3.** A plaintiff may be considered a "prevailing party" for attorney fees purposes merely by "succeed[ing] on *any* significant issue in litigation which achieves *some* of the benefit [plaintiff] sought in bringing suit." *Hensley v. Eckerhart,* 461 U.S. at 433, 103 S.Ct. at 1939, *quoting Nadeau v. Helgemore,* 581 F.2d 275, 278–89 (1st Cir.1978) (emphasis added).

tional decisions. It must first decide whether to separately evaluate the government's arguments. Should the court find some arguments justifiable but not others, the question arises whether to apportion any fee award accordingly. Where justified and unjustified government positions, respectively, are contained within "discrete phases" of the litigation (e.g., trial versus appeal, liability versus damages), or in defense to distinct claims, failure to "segregate" fees could rise to an abuse of discretion. *See Devine v. Sutermeister*, 733 F.2d 892, 896 (Fed.Cir.1984); *Ellis v. United States*, 711 F.2d 1571, 1576 (Fed.Cir. 1983). On the other hand, where it is difficult to tell whether a " 'phase' is 'sufficiently significant and discrete to be treated as a separate unit,' " for fee award purposes, segregation of fees is discretionary with the court. *Devine v. Sutermeister*, 733 F.2d at 896, *quoting Van Hoomissen v. Xerox Corp.*, 503 F.2d 1131, 1133 (9th Cir.1974). Simply put, absent clear discreteness, "whether a court should individually evaluate each motion or issue in a case is essentially a matter of judgment for the court, as this decision is closely tied to the unique facts of each case." *Id.; accord, Keely v. Merit Systems Protection Board*, 793 F.2d 1273, 1276 (Fed.Cir.1986); *McCarthy v. United States*, 1 Cl.Ct. 446, 459 (1983). But "a request for attorney's fees should not result in a second major litigation." *Hensley v. Eckerhart*, 461 U.S. at 437, 103 S.Ct. at 1941; *Keely v. Merit Systems Protection Board*, 793 F.2d at 1276.

Finally, in cases like this one, where the government alleges the presence of "special circumstances [which] would make an award unjust," a further inquiry is necessary. It must first be determined whether the government has shown the presence of the circumstances it alleges. Should the answer be affirmative, it would then be necessary to ascertain whether the circumstances shown are the kind contemplated by Congress. Guidance for this latter determination may be found in the legislative history which describes the "special circumstances" provision as a

'safety valve' [which] helps to insure that the Government is not deterred from advancing in good faith ... novel but credible extensions and interpretations of the law.... It also gives the court discretion to deny awards where equitable considerations dictate an award should not be made.

H.R.REP. NO. 1418 at 11, 1980 U.S.CODE CONG. & ADMIN.NEWS at 4990.

## IV

■ Turning to the question of Kunz' entitlement to fees, the first task is deciding whether to separately evaluate defendant's arguments. The government urges that its litigating position is divisible into seven parts, each of which must be separately assessed. Careful study of the record, however, in light of the principles above articulated, has persuaded that the issues simply do not lend themselves to such septuple segregation.

It would be nearly impossible to segregate the efforts expended on the liability issue from those devoted to damages questions in this case. Unlike the situation presented in *Ellis v. United States*, 711 F.2d at 1571, the proceedings here were not divided into liability and damages phases. Indeed, defendant's request to bifurcate the proceedings was denied well before the trial.[4] The trial transcript records extensive commingling of liability and damages issues in counsels' presentations of evidence and questioning of witnesses. So, although plaintiff prevailed only in part on damages, and although defendant's position in this regard might well have passed "substantial justification" muster, practical realities preclude a damages/liability segregation of any fee award. To attempt such an allocation would require converting this EAJA application into a "second major litigation"—a course proscribed by the Supreme Court. *Hensley v. Eckerhart*, 461 U.S. at 437, 103 S.Ct. at 1941; *Keely v.*

---

4. The government's motion to bifurcate the proceedings was initially granted in an order issued by Senior Judge White, the trial judge. But Judge White vacated that order shortly after it was issued and nearly a full year before the trial.

*Merit Systems Protection Board,* 793 F.2d at 1276.

▮ Nor, for like reasons, would it be practicable to segregate the efforts devoted to defendant's post-trial motion to dismiss. This motion entered the case as a section of the government's post-trial brief. Kunz devoted a section of its post-trial brief to addressing the jurisdictional issue posed by the motion. Since the parties' efforts on this motion were intertwined with their other efforts on the briefs, segregation of the former would be most difficult. It is doubtful that even the most well-kept time records would itemize by particular issue the time spent on a brief. In short, the motion is not "sufficiently ... discrete to be treated as a separate unit" for fee award purposes. *Devine v. Sutermeister,* 733 F.2d at 896.[5]

▮ Defendant has persuaded, however, that its prevailing position with regard to Kunz' amended complaint is "sufficiently significant and discrete to be treated as a separate unit" for fee award purposes. *Id.* The amended complaint added claims which had not been submitted to the contracting officer; defendant prevailed on its motion for partial dismissal on that basis. Defendant also secured the dismissal of a portion of the amended complaint dealing with a claim that had been released. Defendant's success on these discrete jurisdictional issues deprives plaintiff of "prevailing party" status as to them. And the ease with which time spent on this aspect of the litigation can be allocated mandates a partial denial of fees to Kunz. Accordingly, Kunz shall receive no EAJA monies for time it spent researching, drafting and filing its amended complaint, nor for its efforts contesting the government's justifiable motion for partial dismissal thereof.

*See Hensley v. Eckerhart,* 461 U.S. at 433, 103 S.Ct. at 1939.

Plaintiff's post-judgment motion for reconsideration or rehearing also lends itself to separate evaluation. Kunz shall receive no EAJA monies for its efforts on this motion for the same reasons as those just set forth concerning the amended complaint.

**V**

▮ As noted above, the government bears the burden of showing that its position was substantially justified. The government position on liability is the one most crucial to resolution of the instant application. Defendant's effort to demonstrate that it was substantially justified in its liability position does not persuade. The pertinent facts surrounding this issue were set forth in Senior Judge White's opinion and need not be repeated. *See Kunz Construction Co. v. United States,* 12 Cl.Ct. at 75–76. Careful review of the entire record, including that opinion, leads one to conclude that defendant's position on liability lacked "a reasonable basis both in law and fact." *Pierce v. Underwood,* 108 S.Ct. at 2550. Defendant seized upon one provision in the contract's technical specifications (¶ 8.1) and maintained that it predominated over another specification and the contract drawings. The "legal basis" for this effort, defendant states in its Opposition, was the "well-settled rule" of contract interpretation that "the specific provisions of a contract govern over the more general ones." (Def.Opp. at 8). The glaring flaw in this assertion is that the allegedly "specific" provision to which defendant clung so tenaciously is designated in the contract as a *general* provision, to wit: "8.1 *General.* Unless otherwise indi-

---

5. The motion to dismiss was an eleventh-hour argument that the court was wholly without jurisdiction over Kunz' claim. *Kunz Construction Co. v. United States,* 12 Cl.Ct. at 77. If this argument had lent itself to separate evaluation, it might have passed substantial justification muster. For although the argument rested on a case which stood "in juristic solitude" at the time it was decided and which was reversed on appeal, *Pathman Construction Co., Inc. v. United*

*States,* 817 F.2d 1573, 1575 (Fed.Cir.1987), *reversing,* 10 Cl.Ct. 142 (1986), defendant's argument could claim at least this legal basis. And Congress has expressed its intention that the EAJA not deter the government from good faith advancement of "novel but credible extensions and interpretations of the law." H.R.REP. NO. 1418 at 11, 1980 U.S.CODE CONG. & ADMIN. NEWS at 4990.

cated, wiring shall [be] installed in.... conduit [emphasis in original]."

But even if the ascendancy of ¶ 8.1 were somehow granted, defendant would still have been simply unable to draw from that provision definitive support for its argument. For, as Judge White observed, "[¶] 8.1 plainly states in the opening phrase that *if it were* otherwise indicated, the contractor would not be required to install wiring in conduits." *Kunz Construction*, 12 Cl.Ct. at 80 (emphasis added). The judge found that the contract drawings and ¶ 2.2 of the technical specifications did "otherwise indicate" and noted that, even assuming an ambiguity (the very most that could be fairly suggested on defendant's side), Kunz, as the non-drafting party, would still have prevailed. *Id.* Hence, the conclusion is inescapable that defendant's liability defense rested upon very shaky ground, both factually and legally; defendant thus assumed a posture that "could [not have] satisf[ied] a reasonable person," and which therefore was not "substantially justified." 28 U.S.C. § 2412(d)(1)(A); *Pierce v. Underwood*, 108 S.Ct. at 2550.

## VI

██ The government contends that even if its position lacked substantial justification, "special circumstances" present here would render any EAJA award "unjust." 28 U.S.C. § 2412(d)(1)(A). The "special circumstances" which the government asserts are (1) Kunz' pre-trial rejection of an alleged $12,000 settlement offer, and (2) Kunz' alleged frustration of defense counsel's efforts to pursue settlement during litigation. As noted above, defendant bears the burden of establishing the existence of such "special circumstances"; defendant has failed to meet that burden here.

Evidence submitted by defendant concerning pre-litigation settlement offers is contained in three affidavits. One, by James Armstrong, a resident engineer and representative of the contracting officer, states that a $5,000 offer was made to plaintiff on November 12, 1982, although Armstrong "found that the Government was simply unable to support a payment of $5,000 for the work performed" (App. to Def.Opp. at 33). An affidavit by Keith Allen, area engineer and contracting officer representative, concerns events, exact time of which Allen could not recall, but which apparently occurred between the November 12, 1982 $5,000 settlement offer by Armstrong and the February 15, 1983 rejection of plaintiff's claim by the contracting officer. Allen's affidavit states that he offered a settlement of $12,000, that it was refused after Allen declined to provide a breakdown of the settlement figure into constituent elements, and that, thereupon, "all previous offers including the $12,000 offer were withdrawn" (App. to Def.Opp. at 38). (Plaintiff vigorously denies that such an offer was ever made and asserts that had it been, it would have been accepted. *See* affidavits of Kunz and Gittinger (App. to Pl. Reply).) An affidavit of Eileen Fennessy, government counsel during a portion of the litigation phase, states that the Corps of Engineers had offered $11,000 "to settle this case prior to the litigation" (App. to Def.Opp. at 45).

Assuming the accuracy of the Armstrong, Allen and Fennessy affidavits, none of the settlement offers alluded to was in writing and all occurred prior to the contracting officer's final decision on February 15, 1983 which rejected plaintiff's claim for additional compensation. 12 Cl.Ct. at 76. Further, after suit was filed, defendant steadfastly resisted liability, made no written offer to settle the case in any amount and did not choose to avail itself of the "Offer of Judgment" procedure set forth in RUSCC 68. In this context, the pre-litigation settlement attempts described in defendant's affidavits do not constitute a "special circumstance" which would render an EAJA award unjust.

██ Similarly, defendant has failed to demonstrate the existence of its second alleged "special circumstance," i.e., that Kunz frustrated defendant's settlement efforts. Assuming the accuracy of government's allegations on this point (contained in the affidavit of Ms. Fennessy), the most that could be said would be that Kunz

**438**

failed to submit promised settlement proposals. Such behavior would certainly not make "an award [of fees] unjust." 28 U.S.C. § 2412(d)(1)(A). Nowhere is it written that one side alone is responsible for making settlement overtures.

## VII

■ To summarize, Kunz is entitled to an award for all of its efforts in this litigation except for the time spent preparing and defending its amended complaint and its post-judgment motion for reconsideration or rehearing. Also, Kunz shall be reimbursed for its expert witness report. *See* 28 U.S.C. § 2412(d)(2)(A). Finally, Kunz is entitled to recover the attorney fees incurred preparing its EAJA application since it is otherwise entitled to recover. *Schuenemeyer v. United States*, 776 F.2d 329, 333 (Fed.Cir.1985); *Devine v. Sutermeister*, 733 F.2d at 899; *McCarthy v. United States*, 1 Cl.Ct. at 463.

## VIII

The next task is to determine quantum. The Supreme Court has stated that "the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. at 433, 103 S.Ct. at 1939. Concerning hourly rates, the EAJA provides:

> [A]ttorney fees shall not be awarded in excess of $75 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee.

28 U.S.C. § 2412(d)(2)(A)(ii). Plaintiff bears the burden of establishing the existence of "special factor[s]" which would "justif[y] a higher fee." *Id; see Continental Web Press, Inc. v. NLRB*, 767 F.2d 321, 323–24 (7th Cir.1985); *Wall Industries, Inc. v. United States*, 15 Cl.Ct. 796, 797 (1988); *Keyava Construction Co. v. United States*, 15 Cl.Ct. 135, 139 (1988). The

Supreme Court has recently held that these "'special factors' ... must be such as are not of broad and general application." *Pierce v. Underwood*, 108 S.Ct. at 2554. Here, although some of the fees Kunz requests exceed the statutory rate (see below), Kunz has failed to show a "special factor" contemplated by the statute.

■ Upward adjustment of the statutory rate to account for "an increase in the cost of living," on the other hand, is within the discretion of the court. 28 U.S.C. § 2412(d)(2)(A)(ii); *Oliveira v. United States*, 827 F.2d 735, 742 (Fed.Cir.1987). The "increase in the cost of living" is generally determined by reference to the Department of Labor's Consumer Price Index (CPI). *See Wilkett v. I.C.C.*, 844 F.2d 867, 875 (D.C.Cir.1988); *Allen v. Bowen*, 821 F.2d 963, 967 (3rd Cir.1987). The CPI figures to be applied are those for the cost of living increases experienced in the locale where legal services were rendered, which in this case would be the San Antonio area.[6] *See Keyava Construction*, 15 Cl.Ct. at 139. Application of the CPI in this way "is merely a matter of calculation." *Allen v. Bowen*, 821 F.2d at 968. Because of CPI's broad acceptance, a court can take judicial notice of its figures when adjusting EAJA awards for inflation. *See Hyatt v. Heckler*, 807 F.2d 376, 383 (4th Cir.1986), *cert. denied*, — U.S. —, 108 S.Ct. 79, 98 L.Ed.2d 41 (1987).

When computing the cost of living adjustment (COLA), a court must answer two additional questions: "[F]irst, what should serve as the baseline date in measuring the COLA? Second, should an adjustment be made [as of the time when] legal services were rendered, or [as of the time when] the fee award is paid?" *Wilkett v. I.C.C.*, 844 F.2d at 874. The baseline date is in issue here because EAJA was originally enacted in 1981 and was re-enacted in 1985.

■ Defendant contends that the effect of Congress' 1985 re-enactment of EAJA without raising its $75 hourly rate was to establish 1985 as the new COLA baseline

---

**6.** Metropolitan San Antonio is not one of the 27 local areas for which CPI provides data; nonetheless, CPI does publish figures by region of the country and by size of city within regions. It is these latter figures which shall be consulted here. (*See* Appendix to this Opinion).

date. But a majority of the circuit courts which have considered defendant's argument on this point have rejected it. *See Hirschey v. FERC,* 777 F.2d 1, 5 (D.C.Cir. 1985); *Sierra Club v. Secretary of the Army,* 820 F.2d 513, 520–23 (1st Cir.1987); *Trichilo v. Secretary of Health & Human Services,* 823 F.2d 702, 705–07 (2d Cir. 1987); *Allen v. Bowen,* 821 F.2d 963, 967 (3rd Cir.1987); *Baker v. Bowen,* 839 F.2d 1075, 1084 (5th Cir.1988). So, too, has Judge Andewelt of this court in a recent opinion. *Keyava Construction Co. v. United States,* 15 Cl.Ct. 135, 139–40 (1988). We agree with the majority interpretation of the statute, and adopt October 1981, the effective date of the original EAJA, as the starting point from which to calculate COLAs.

■ As to the second question, this court again agrees with the fora just cited to the effect that the COLA should be made as of the time at which legal services were rendered. *See, e.g., Wilkett v. I.C.C.,* 844 F.2d at 875, *citing Massachusetts Fair Share v. Law Enforcement Assistance Administration,* 776 F.2d 1066 (D.C.Cir.1985); *Keyava Construction Co. v. United States,* 15 Cl.Ct. at 140 (applying a single percentage COLA to all recoverable fees based on rate of inflation in pertinent locale from baseline date to temporal mid-point of compensable services).

Where, as in the instant case, fees are sought for partners, associates and paralegals, each at different hourly rates, a court must decide how and whether to adjust those rates. Here, Kunz seeks $35 per hour for paralegal time, $65 to $75 per hour for associate attorney time, and $110 to $125 per hour for partner time.[7]

Kunz' failure to show such "special factors" as might have "justifie[d] a [fee] higher" than the statutory rate, as noted above, dictates that Kunz cannot recover the rates it seeks for partner time. Instead, Kunz is entitled only to the statutory rate of $75 per hour plus a COLA, for each recoverable partner hour. *See* Tables III and IV of the Appendix to this Opinion.

■ Defendant urges, without supporting authority, that "if the partner's rate is to be adjusted downward ... the associate attorney rate should be adjusted correspondingly." (Def.Opp. at 15 n. 15). This contention fails to consider the rationale for downward adjustment of partner rates. This court is constrained to reduce the hourly rates Kunz seeks for partner time simply because those rates must be brought within the statutory cap. The same rationale would not apply to the rates sought for associate time since they are already at or below EAJA's $75 limit. Nothing in the legislative history suggests that Congress intended courts to preserve a partner/associate proportionality in hourly rates when making EAJA fee awards, nor does this court know of any case which has so held.[8] Accordingly, this court adopts the associate attorney rates requested by Kunz, to wit, $65 per hour for compensable work performed in 1984 and 1985 and $75 per hour for compensable work done in 1986 and 1987.

■ Finally, Kunz' fee application includes a request for paralegal fees of $35 per hour (for seven hours' work). The government, in its Opposition, raises objection neither to the award of paralegal fees nor to the hourly rate Kunz requests for paralegal time. Paralegal fees could be included in EAJA's definition of recoverable "fees and other expenses," *see* 28 U.S.C. § 2412(d)(2)(A), and at least two circuits have permitted the award of paralegal fees under EAJA. *Hirschey v. FERC,* 777 F.2d 1, 6 (D.C.Cir.1985); *Kopunec v. Nelson,* 801 F.2d 1226, 1229 (10th Cir.1986). Accordingly, this court adopts Kunz' request-

---

7. The law firm retained by Kunz increased its hourly rates for associate attorney time from $65 to $75 per hour, and for partner time, from $110 to $125 per hour, in 1986.

8. Following such a course may be within the trial court's discretion, but is certainly not required. *See Lucero v. City of Trinidad,* 815 F.2d

1384, 1385 (10th Cir.1987) (holding, in a case involving an award of attorney fees under 42 U.S.C. § 1988, that the district court had not abused its discretion in downwardly adjusting fees to rates of $75 per hour for partner time, $50 for junior associate time, and $25 for law student and legal assistant time).

ed rate of $35 per hour for any compensable paralegal time.

## IX

█ The government contends that Kunz' application should be denied because it is (1) "exorbitant" in light of the amount in controversy, and (2) "inadequate" for its failure to provide sufficient detail in its allocation of attorney hours. These contentions are without merit. With respect to. the first, defendant is implying that it would have been "more practical [for Kunz] to endure the injustice than to [have] contest[ed] it." H.R.REP. NO. 1418 at 9, 1980 U.S.CODE CONG. & ADMIN.NEWS at 4988. But that is exactly the kind of situation for which Congress created the Equal Access to Justice Act. *Id.* If, in defendant's eyes, the fees which Kunz recovers are "exorbitant," the total will have resulted from defendant's persistence in a position that caused Kunz to incur those fees.

With respect to the alleged inadequacy of Kunz' fee application, the Supreme Court's unequivocal directive that "a request for attorney's fees should not result in a second major litigation" is particularly apt. *Hensley v. Eckerhart,* 461 U.S. at 437, 103 S.Ct. at 1941; *Keely v. Merit Systems Protection Board,* 793 F.2d at 1276. Kunz' application is clearly adequate to determine not only its entitlement to fees but the parameters of its recovery. Requiring Kunz to re-file now, after the application has matured, for a new round of responsive pleading based merely on a quantum question would certainly transgress the Court's proscription just quoted.

## X

In summary, Kunz shall receive the hourly rates it requests for each recoverable associate attorney and paralegal hour, but shall not receive the full rate it seeks for partner time. Instead, Kunz shall receive only rates shown in Table IV of the Appendix (the statutory rate of $75 per hour plus COLA's shown in Table III of the Appendix) for its recoverable partner time.[9]

## XI

Based on the foregoing, plaintiff's EAJA application is DENIED as to fees incurred in preparation of its post-judgment motion for reconsideration or rehearing and in preparation and defense of its amended complaint, but is GRANTED as to fees and expert witness expenses incurred attendant to its other efforts in this litigation, including those allocable to the instant fee application.

The amount of plaintiff's award shall be based upon hourly rates of $35 for recoverable paralegal time, $65 for recoverable 1984 and 1985 associate attorney time, $75 for recoverable 1986 and 1987 associate time, and a cost-of-living-adjusted $75 for recoverable partner time. The COLA is to be calculated from October 1981, the original effective date of EAJA, to the time when legal services were rendered, using figures from the Consumer Price Index for Size Class B Cities of the Southern Region (since San Antonio, Texas, the pertinent locale in the case at bar, is a Size Class B Southern Region city). The applicable figures appear in Table IV of the attached Appendix.

The parties shall confer in an effort to reach agreement on the precise amount of the award based on the guidelines set forth herein. Not later than April 10, 1989, the parties shall file a joint status report on the progress of their efforts to reach agreement on the amount of an award.

## APPENDIX

**Table I.** Consumer Price Index for All Urban Consumers (CPI–U)[1] in Size Class B

---

9. The parties may agree upon and adopt a single rate for all recoverable partner time. *See Keyava Construction Co. v. United States,* 15 Cl.Ct. at 140.

1. The CPI–U covers approximately 80% of the population, including wage earners and clerical workers, professional, managerial, and technical workers, the self-employed, short-term workers, the unemployed, retirees, and others not in the labor force. The Index is based on prices of food, clothing, shelter, fuels, transportation fares, dentists' and doctors' fees and other goods and services that people buy for day-to-day liv-

Cities [2] of the Southern Region.[3] Dates in this and subsequent tables represent period of legal services for which Kunz seeks compensation. (*Consumer Price Index point for EAJA baseline date of October 1981 = 94.0*).

|      | Feb.  | Apr.  | June  | Aug.  | Oct.  | Dec.  |
|------|-------|-------|-------|-------|-------|-------|
| 1984 | 102.2 | 103.0 | 103.6 | 104.5 | 105.3 | 105.4 |
| 1985 | 106.0 | 106.4 | 107.4 | 107.8 | 107.7 | 109.0 |
| 1986 | 109.2 | 108.4 | 109.3 | 109.4 | 110.3 | 110.2 |
| 1987 | 111.3 | 112.1 | 112.5 | 113.2 | 114.4 |       |

**Table II.** Percent change in consumer prices [4] in Southern Region's Size Class B Cities calculated from EAJA baseline date (October 1981) to dates of legal services.

|      | Feb.  | Apr.  | June  | Aug.  | Oct.  | Dec.  |
|------|-------|-------|-------|-------|-------|-------|
| 1984 | 8.72  | 9.57  | 10.21 | 11.17 | 12.02 | 12.12 |
| 1985 | 12.76 | 13.19 | 14.25 | 14.68 | 15.63 | 15.95 |
| 1986 | 16.17 | 15.31 | 16.27 | 16.38 | 17.34 | 17.23 |
| 1987 | 18.40 | 19.25 | 19.68 | 20.42 | 21.70 |       |

**Table III.** Cost of living adjustment (COLA) to EAJA's $75 per hour attorney fee rate for legal services rendered in San Antonio (the applicable locale and a Southern Region Size Class B City) during periods indicated based on percentages in Table II above. (Figures represent dollars.)

|      | Feb.  | Apr.  | June  | Aug.  | Oct.  | Dec.  |
|------|-------|-------|-------|-------|-------|-------|
| 1984 | 6.54  | 7.18  | 7.66  | 8.38  | 9.01  | 9.09  |
| 1985 | 9.57  | 9.89  | 10.69 | 11.01 | 11.72 | 11.96 |
| 1986 | 12.13 | 11.48 | 12.20 | 12.29 | 13.01 | 12.92 |
| 1987 | 13.80 | 14.44 | 14.76 | 15.32 | 16.28 |       |

**Table IV.** Applicable maximum (cost-of-living-adjusted) hourly attorney fee rates during period of services for which compensation is sought derived by adding amounts in Table III to EAJA rate of $75. (Figures represent dollars.)

|      | Feb.  | Apr.  | June  | Aug.  | Oct.  | Dec.  |
|------|-------|-------|-------|-------|-------|-------|
| 1984 | 81.54 | 82.18 | 82.66 | 83.38 | 84.01 | 84.09 |
| 1985 | 84.57 | 84.89 | 85.69 | 86.01 | 86.72 | 86.96 |
| 1986 | 87.13 | 86.48 | 87.20 | 87.29 | 88.01 | 87.92 |
| 1987 | 88.80 | 89.44 | 89.76 | 90.32 | 91.28 |       |

ing. In calculating the Index, price changes for the various items in the location in question are averaged together with weights which represent their importance in the spending of the analyzed population group. Bureau of Labor Statistics, U.S. Department of Labor, *CPI Detailed Report Data for December 1988,* 109 (1989).

2. Size Class B Cities are those whose populations are between 450,000 and 1,200,000 inhabitants. San Antonio's population was 914,000 in 1986. U.S. Department of Commerce, *Statistical Abstract of the United States* (1988).

3. CPI's Southern Region consists of Texas, Oklahoma, Arkansas, Kentucky, West Virginia, Maryland, Delaware, the District of Columbia, Virginia, Tennessee, the Carolinas, Georgia, Florida, Alabama, Mississippi, and Louisiana.

4. Movements of the Index from one month to another are expressed in percent changes rather than Index point changes. For example, the percent change in Index points from October 1981 (EAJA's baseline date) to February 1984 is calculated as follows:

Index Point Change

| CPI for February 1984 | 102.2 |
|---|---|
| Less October 1981 Index | 94.0 |
| Equals Index Point Change | 8.2 |

Percent Change

| Index Point Difference | 8.2 |
|---|---|
| Divided By October 1981 Index | 94.0 |
| Equals | 0.0872 |
| Results Multiplied By 100 | 0.0872 × 100 |
| Equals Percent Change | 8.72 |

U.S. Department of Labor, Bureau of Labor Statistics, *CPI Detailed Report Data for December 1988,* 109 (1989).